## ROBINSON *v.* THE STATE OF GEORGIA.

1. As the State did not rely wholly on the evidence of the alleged accomplice to connect the accused with the offence, it was not incumbent upon the court, without request, to instruct the jury touching corroboration.

2. The objection presented and ruled upon as to the admission of evidence is not disclosed in the motion for a new trial.

3. Riot not being the subject-matter of the indictment, the definition of it was unnecessary.

4. The indictment being against one person only, and no riot being charged, a conviction could not be had for that offence.

5. The evidence negativing a mere assault or assault and battery, failure to instruct the jury touching these offences was not error.

6 The newly discovered evidence was not such as to require a new trial.

March 14, 1890.

Criminal law. Charge of court. Evidence. Practice. New trial. Before Judge ADAMS. Chatham superior court. December term, 1888.

Indictment against Robinson for assault with intent to murder McMurray on November 29th, 1888. The testimony of McMurray was, briefly, as follows : On the day mentioned, he was on duty as a policeman in Savannah. About twelve o'clock, at the corner of Pine and Farm streets, some men were blocking the sidewalk, and he ordered them off. When, on his beat, he reached the corner of Pine and Orange streets, he met three or four men, one of whom jokingly said to

another that he had a good mind to have the other arrested, that there was a policeman; the other cursed the policeman, who arrested him and undertook to take him in, when the crowd that he had previously ordered off surrounded him, calling out, "Kill him! Kill him!" and other things similar. Some of them caught hold of the man under arrest, who took McMurray's club out and commenced hitting him over the head. McMurray pulled out his pistol and fired at this man, who ran; and as soon as McMurray could get out of the crowd, he ran after him and fired again until he emptied his pistol. The man ran up on a stoop where a woman was standing, and asked her to let him in, saying he was shot; but the woman shut the door in his face. McMurray caught him by the collar, pulled him down on the sidewalk, and soon discovered that he had wounded him. McMurray then started back to get his helmet, and when near the corner of Bryan street, the crowd surrounded him and knocked him down with rocks, sticks, bricks and the like. He got up and held them at bay until they discovered his pistol was emptied; he then ran in the direction of Olive street; when he was passing the house of Pearl Prendergast, she beckoned him to come in; he went in the front room, and she closed the door. In a short while the crowd broke in the front door, and he went into the side room; then the door of that room was broken open, and he was dragged into the street through the front room, where he saw the defendant (whom he knew well) standing in the crowd with a big stick in his hand. McMurray did not know any of the others in the crowd. He was dragged into the street and beaten into insensibility; was struck four or five times in the head, cut in the right breast, arm and shoulder, bruised and beaten all over the body, and three or four of his teeth were shattered. Some of the crowd (he did not know who) were saying, "Kill

him! Kill him!" There were ten or twelve people in the house when he saw defendant, but no women; two or three women were in the house when McMurray went in.

Virgil Stephens was one of the crowd that McMurray forced to stop blocking the street. His testimony was substantially the same as the account of the transaction given by McMurray. He testified that he saw the defendant at the beginning of the riot, and saw him hit McMurray on the head with a bed-slat as the crowd dragged him from the house; had known defendant about two years, and could not be mistaken as to his being the man who did this. Also that he (Stephens) had been indicted with defendant for being an accomplice in this riot. It was shown that the defendant was arrested on the complaint of Laura Harris, who said she saw him hit McMurray with the slat, and so testified on the preliminary trial, identifying him positively. There was testimony that he took a lunch at a counter on Bryan street at some time between eleven and two o'clock, and that about half an hour after the riot he was seen at the corner of Bryan and Farm streets, not apparently excited, and to a question whether he was "into this thing," he answered that he knew nothing about it and was keeping out of it. He stated, at the trial, that he was perfectly innocent and knew nothing about the riot, but was in another part of town when it was going on; that the character of Laura Harris was bad, and that she prosecuted him because he would not let her stay in the house with him; that she had him arrested once before on a false warrant and then ran away from town; that she was arrested at the same time he was, and then made the statement as to his hitting McMurray; and that neither she nor Stephens saw him in the crowd, and the latter had said, while in jail, that he did not know who hit McMurray nor any-

thing about it, but he was subsequently advised by his lawyer to turn State's evidence and see if he could throw anybody; etc. This lawyer testified in rebuttal of the last statement.

After verdict of guilty, the defendant moved for a new trial on the grounds indicated in the opinion. The one first referred to alleged that it was error to fail to charge the jury that the testimony of an accomplice uncorroborated, was not sufficient to convict one of felony, and that the testimony of Stephens was of a suspicious character, calling for the cautious inspection of the jury, by reason of his complicity in the crime. Counsel for defendant had moved to rule this testimony out. Stephens was under an indictment for assault with intent to murder McMurray at the time and place stated in the indictment under which defendant was found guilty, and was also charged jointly with defendant with an assault with intent to murder one Cronin in what was really a continuous riot, for alleged conduct during which defendant was on trial. The judge certified that no request was made to charge on this subject, and that there was no testimony to show that Stephens was an accomplice.

The newly discovered testimony was shown by the affidavits of Rose Stanley and Isabella McKinsey, and by copies of separate indictments against Stephens and defendant for assault with intent to murder McMurray, and of a joint indictment against them and others for assault with intent to murder Cronin on November 29, 1888, with the verdict of guilty rendered against Stephens on the joint indictment on February 7th, 1889, since the verdict in this case. The affidavit of Rose Stanley was to the effect that she was in her house, next door to Mrs. Prendergast's, when the riot took place, and went to Mrs. Prendergast's and attempted to quiet the row ; while she was standing on the

stoop, the door was opened and the policeman thrown out, falling against her; she stood by him and saw all that occurred; has known defendant about ten years, and knows that he did not strike McMurray; did not see defendant at any time during the riot; if he had struck McMurray after he was brought out of the house, she would have seen him; saw every man who came out of the house and knows that defendant was not one of them. The affidavit of Isabella McKinsey was to the effect that, after the riot had ceased, she saw defendant and others at Bay and Farm streets, heard one of them, a man named "Yank," with his fist in defendant's face, curse him and ask him why he was not there to help with the riot, saying he was never on hand to help in anything; and defendant said he was up town attending to his business, what had he to do with any row? There was an affidavit to the effect that the affiant had known Isabella McKinsey for some years, and she was a woman of good character and repute; also the affidavits of defendant and his counsel as to ignorance of this newly discovered testimony until after the trial, and that they used all possible diligence, etc.

The motion was overruled, and defendant excepted.

W. S. CHISHOLM, Jr., and W. L. CLAY, for plaintiff in error.

W. W. FRASER, solicitor-general, by S. B. ADAMS, for the State.

BLECKLEY, Chief Justice.

1. This conviction did not rest on the evidence of the alleged accomplice alone, but in a large measure upon that of the policeman who was assaulted and beaten. The code, §3755, says: "The testimony of a single witness is generally sufficient to establish a fact. Exceptions to this rule are made in specified cases; such as to convict of treason or perjury, in any case of felony

where the only witness is an accomplice, and to rebut a responsive statement in an answer in equity—in these cases (except in treason) corroborating circumstances may dispense with another witness." The policeman was barbarously beaten by a mob, and he identified the accused as one of the persons present whilst the mob was raging; and as being armed with a stick. He was in a room where he had no business to be, unless he were coöperating with the mob. Unless he, with others, pursued the policeman into that room, his presence there was wholly unaccountable. His actually striking the policeman was shown by the evidence of the accomplice only, but whether he did the striking, or some one else, is not material to his guilt, if he was there for the purpose of aiding in the work of the mob; and there is not the least suggestion in the evidence that his presence was for any other purpose. Indeed, he denies in his statement that he was present at all. But the policeman knew him well, and identified him beyond all question. Under these circumstances, we hold that it was not incumbent upon the court to put the jury on their guard against trusting to the evidence of the accomplice, more especially as no request was made by the prisoner's counsel for any charge on that subject, and as the court thought there was no evidence before it fixing upon the witness the character of an accomplice. The State did not seek to convict upon the evidence of the accomplice alone, but adduced other evidence, almost, if not wholly, sufficient to warrant the verdict, independently of the evidence of the accomplice. This being so, the rule of corroboration laid down by the code does not apply in its letter, and unless the attention of the court had been called to the accomplice element in the evidence, especially as the judge says he was not aware of it, we think the conviction was not vitiated by the omission to charge on that subject.

2. Some of the grounds of the motion for a new trial complain of the admission of evidence over the objection of counsel for the accused. But in no instance is the objection which was presented and ruled upon, disclosed in the motion.

3. The court charged, amongst other things: "If the evidence does establish beyond a reasonable doubt either that the defendant committed the assault as charged, or was engaged in a riot in pursuance of which the assault was committed, then of course you should find him guilty." It is complained that the court failed to define the term "riot," and failed to charge that the defendant could, under the indictment, have been found guilty of a riot. The facts disclosed in evidence showed a most outrageous riot, and the jury could not possibly have misunderstood the meaning of the court on that subject.

4. And as to failing to charge that the accused could have been found guilty of a riot, this objection is fully answered by two facts: One is, that he was indicted alone. The other is, that no riot is charged, or even disclosed in the bill of indictment. Though there was undoubtedly a most aggravated riot committed, it was not before the court and the jury as a substantive offence, but only as a part of the facts surrounding the assault with intent to murder which the indictment alleged. In its nature (Code, §4514) riot is a joint offence for which one person alone cannot be indicted, and though by section 4692 each may be tried separately, this latter section gives no countenance to indicting one of several rioters, or to finding any one guilty of a joint offence upon an indictment which charges no such offence.

5. The omission to instruct the jury that under the indictment the accused could have been found guilty of an assault, or of an assault and battery, was not error, for there was nothing in the evidence to justify the

court in so instructing the jury. The facts in proof showed conclusively that the assailants of the policeman were after blood and life, and had no such purpose as the commission of a mere assault, or assault and battery. *Hendricks* v. *State*, 73 *Ga.* 577.

6. We concur with the trial judge in thinking that the newly discovered evidence (for which see the official report) was not such as to require the grant of a new trial. And in view of all the facts, we think there was no error in refusing the motion.

*Judgment affirmed.*