### 3581.  COCHRAN v. THE STATE.

1. The evidence fully supports the verdict.

2. A palpable slip of the tongue on the part of the judge, in instructing the jury as to an abstract proposition of law, is not sufficient cause for reversing the judgment, where, upon consideration of it in connection with the context and all the rest of the charge, it is plain that the jury could not have been misled.

3. The expression, "fears of a reasonable man," as used in the Penal Code (1910), § 71, is identical in meaning with the expression, "fears of a reasonably courageous man."

4. No material error appears.

DECIDED OCTOBER 10, 1911.

Conviction of manslaughter; ·from Fayette superior court—Judge Daniel. June 3, 1911.

*A.* O. *Blalock, J. W. Culpepper, Lester Dickson, J. F. Golightly,* for plaintiff in error.

*J. W. Wise,* solicitor-general, *Cleveland & Goodrich,* contra.

POWELL, J. 1. The deceased and the accused had a short quarrel as to the payment of certain rents. The deceased threw a rock of considerable size at the accused, and missed him. The accused jumped or fell out of the wagon in which he was standing, and the two went together, and the accused inflicted the mortal wounds by shooting with a pistol which he had. The deceased was unarmed. This statement of facts presents the case most favorably to the accused. It is substantially his own version of the affair, so far as physical facts are concerned. It is plain that this makes a case of manslaughter. Conceding that the initial attack of the deceased with a rock was intended to be a deadly attack, still when he had thrown the rock and had totally disarmed himself, the accused could claim no justification for shooting him thereafter. Justification can not be based on a deadly assault which has been completely ended, unless the assailant has some further apparent ability to continue it. It is true that the defendant in his statement to the jury said: "I done what I done to save my life; I was scared, as the man was coming on me. I would not have done it for anything, except to save my life." As he sets up no facts showing any actual or apparent danger to his life at the time of the shooting, the statement which he made in the next breath, and which makes him guilty of voluntary manslaughter, seems thoroughly to justify the verdict of the jury. His further statement was: "He [the deceased] jumped on me, and through heat of passion I shot."

2. The judge, in the course of his instructions to the jury, by what was a palpable slip of the tongue, stated that in order to reduce a homicide from murder to manslaughter, there must have been an assault·on the part of the person killed, amounting to a felony; but, as a part of the same sentence, he told the jury that if it appeared that the deceased was making an assault, amounting to a felony, upon the accused, and the accused shot therefor, the

homicide would be justifiable, and the verdict of the jury should be "not guilty." The inaccuracy came in such a context that no reasonable man, lawyer or layman, would have been confused. It was so plainly a slip of the tongue as not to be misleading. Counsel for the plaintiff in error seem to have recognized this up to the time of the argument of the case in this court; for, while an assignment of error is made upon that portion of the charge in which this inaccuracy appears, no assignment of error is made as to this particular portion on the ground which we have just been discussing.

3. In instructing the jury as to the defense of justification through reasonable fears, the court, instead of using the expression, "fears of a reasonable man," used the expression, "fears of a reasonably courageous man;" that is, he told the jury that, before justification by fears alone could be complete, it must appear that the defendant was acting under the fears of a reasonably courageous man. The exact point made is that the code (Penal Code (1910), § 71) uses the expression, "fears of a reasonable man," and that a man who was not reasonably courageous might be a reasonable man. In our opinion, the two expressions, as related to the subject of the code section, are identical. Fear is the subject under treatment, and, as to the subject of fear, courageousness (as that word is employed, both in judicial phrase and in common parlance) is that quality of the reasonable man to which the provision of the law applies. In other words, when the law states in effect that certain combinations of circumstances, which, though not actually fraught with danger, are apparently so, may justify a homicide, and then proceeds to define the conditions under which such a set of circumstances may justify, it merely lays down a standard, and that standard is that the circumstances must be such as that a man of normal courage would have been led into a belief of danger by them; and we know of no more accurate expression of common usage to convey this notion than the expression, "the fears of a reasonably courageous man." If reasonableness as to any other quality of human nature, except the quality of courageousness, were to be admitted into consideration in fixing this standard, and were allowed to take the place of courageousness, the standard would at once be destroyed. The expression, "reasonable man," so often found in legal or judicial writings, varies with the context. As to the subject of care, it means a reasonably pru-

dent man; as to that duty of inquiry which the law sometimes imposes for the purpose of affecting a party with notice, it means a man of reasonably good business judgment and acumen; as to fear, it means a man of reasonable courageousness, and so on throughout the whole range of varied human activities.

4. Certain other assignments are made, but, after carefully considering them all, we find that none of them are well taken.

*Judgment affirmed.*