## DEVEREAUX *v.* THE STATE.

1. There was testimony that the deceased was in articulo mortis and conscious of his condition at the time he made the statement received in evidence as a dying declaration, and the court properly instructed the jury with reference thereto.
2. Such instruction was not erroneous because of an omission to charge, in the absence of a written request, that evidence of a dying declaration should be received by the jury with great caution.
3. The charge on the subject of malice was not open to the criticism that it was inappropriate because no unlawful homicide was proved.
4. The charge on the subject of justifiable homicide was not open to the criticism that it narrowed the law of self-defense.
5. In an instruction relating to the impeachment of witnesses it is proper to omit reference to a form of impeachment concerning which there is no evidence.
6. The evidence did not authorize an instruction upon the defense of one's habitation, as contained in the Penal Code, § 72.
7. The evidence did not authorize a charge on voluntary manslaughter.
8. The verdict is supported by the evidence.

JULY 15, 1913.

Indictment for murder. Before Judge J. B. Park. Hancock superior court. April 30, 1913.

*John R. Cooper* and *T. M. Hunt,* for plaintiff in error.

*T. S. Felder, attorney-general,* and *J. E. Pottle, solicitor-general,* contra.

EVANS, P. J. The plaintiff in error was convicted of the murder of L. D. Thornton, and recommended to the mercy of the court. According to the testimony submitted by the prosecution, the accused had a farm on the plantation of the decedent. The decedent went to the house of the accused and asked him why he was not hoeing his cotton. The accused replied that he was sick. Both engaged in a colloquy, and the accused got his shotgun. The decedent, who was unarmed, ran around the house, entreating the accused not to shoot him. The accused shot him twice as he was endeavoring to escape. The wound was inflicted upon the right side of the body, in the upper part of the lumbar region. The gunshot made a hole as large as a man's fist, and broke several ribs. The decedent survived about six hours after receiving his injuries. Shortly before his death, after stating that he knew he was going to die, he declared that the accused shot him. The defendant offered a witness who testified, that after the decedent and the accused engaged in a wordy altercation, each cursing the

other, the decedent ran to his home, procured a pistol, and immediately returned to the house of the accused; that he came into the house of the accused,' saying "Buck, if you want to shoot me I am here;" the accused replied, "I didn't say I wanted to shoot you, and .I didn't say I was going to do it, but before I will let you run over me like you did this morning I will shoot you like a damn rabbit." Whereupon decedent presented his pistol and shot the accused, who was sitting on the foot of his bed. The accused then shot the decedent with a gun. Evidence was submitted that this witness had made statements outside of court, respecting the homicide, materially different from his testimony.

1.   There was no error in admitting the dying declaration of the decedent as to the cause of his death and who shot him, as it was made by the declarant in articulo mortis and while conscious of his condition. Penal Code, § 1026.

2.   "While the testimony of a witness whose evidence goes to the jury through the medium of dying declarations is to be considered under the same rules that govern them in determining the credibility of other.witnesses who testify from the stand, the failure of the judge to charge upon the subject of such rules will not be a sufficient reason for granting a new trial, in the absence of an appropriate and timely written request asking instructions upon the subject." *Hall* v. *State,* 124 *Ga.* 649 (2), 650 (52 S. E. 891).

3.   The jury were instructed: "Under the definition of malice as defined by the law, it does not necessarily imply any previous ill will on the part of the person killing against the person killed; but where a homicide is shown to have been committed, and all the circumstances connected with such homicide show a deliberate intention unlawfully to take human life, without mitigation, or without excuse, or without justification, under circumstances of that kind malice as defined by the law would exist." There was evidence of an unlawful killing, and this instruction was not erroneous because the defendant in his statement admitted and justified the killing. , *Mann* v. *State,* 124 *Ga.* 760 (53 S. E. 324, 4 L. R. A. (N. S.) 934).

4.   The court's instructions as complained of in the third and sixth grounds of the amended motion, when considered in connection with that part of the charge from which the excerpts were taken, were not open to the criticism that they narrowed the law

of self-defense, in that the jury were not told that if they should find that the deceased was making an assault upon the defendant, less than a felony, and the circumstances were such as to arouse in him the fears of a reasonable man that his life was in danger, and he killed the decedent under the influence of those fears, the homicide would be justifiable. The court instructed the jury, in immediate connection with the charges complained of, that "If the circumstances that surrounded the defendant at the time [of the killing] were sufficient to excite the fears of a reasonable man that his own life was in danger, or a felony was about to be committed on his person, and he shot under the influence of those fears and not in spirit of revenge, under the laws of the State of Georgia he would be justifiable, and you would not be authorized to convict the defendant of any offense."

5. The court charged that a witness may be impeached by disproving the facts testified to by him, and by previous contradictory statements made by him of matters relevant to his testimony and to the case. It is contended that the court also should have instructed the jury that a witness was impeachable as to his general bad character. There was no attempt to impeach any witness by proof of general bad character, and the court properly gave no instruction as to this mode of impeachment.

6-8. The summary of facts, though brief, is comprehensive of the case made by the prosecution and the defense. There was no attack upon the habitation of the accused, and the court properly refrained from giving in charge Penal Code, § 72. According to the evidence submitted by the prosecution the accused was guilty of murder. If the witness offered by the accused was credible, he was justifiable in taking the life of the decedent. There was no middle ground. The verdict is supported by the evidence, and no reason appears for interfering with the discretion of the court in refusing a new trial. *Judgment affirmed. All the Justices concur.*