## THOMAS *v.* THE STATE.

1. On the trial of one indicted for murder, where the court after a preliminary hearing admits in evidence dying declarations offered by the State, the failure to instruct the jury as to their consideration of that character of evidence is not cause for a new trial, where the State does not rely for conviction solely on dying declarations, and where there is no appropriate and timely written request for instructions as to them.

2. It was not error in this case for the court, after the instructions given on the subject, to fail to further charge as follows: " In order to convict one as the principal in the second degree, it is necessary to prove the guilt of the principal in the first degree."

3. The instruction as to the credit to be given a successfully impeached witness, upon which error is assigned, is not, when considered in view of the whole charge, and the connection in which it was given, cause for a new trial.

4, 5. Failure to instruct the jury on the subject of impeachment of a witness, as set forth in grounds four and five of the motion, is not cause for a new trial, there being no request for such instructions.

6. The evidence authorized the verdict, and the court did not err in refusing a new trial.

No. 1570.  MAY 18, 1920.

Indictment for murder. Before Judge Meldrim. Montgomery superior court. June 26, 1919.

*A. C. Saffold* and *Eschol Graham,* for plaintiff in error.

*Clifford Walker, attorney-general, W. A. Wooten, solicitor-general,* and *M. C. Bennet,* contra.

FISH, C. J. Berry Thomas and Dink Thomas were jointly indicted for murder, in the only count in the indictment. Neither was charged as principal in the second degree. Berry Thomas alone was put on trial, and was convicted as charged, with recommendation to life imprisonment. His motion for a new trial having been overruled, he excepted.

1. Complaint is made in the motion for a new trial that the court erred "in failing to charge the jury substantially as follows: Dying declarations, made by any person in the article of death, who is conscious of his condition, as to the cause of his death, and the person who killed him, are admissible in evidence in a prosecution for the homicide." And as follows: "It is a question for the jury to determine whether or not any dying declarations were made by the deceased. If you find that when in the article of death, and that he was conscious of his condition, the deceased made any statement as to the cause of his death, and the person who killed him, then you may consider the same along with the other evidence in the case, determining the guilt or innocence of the defendant." No request was made to give such instructions, nor did the State rely for a conviction on dying declarations alone, but introduced witnesses who claimed to have seen the commission of the homicide, and whose testimony, if the jury believed it, authorized them to find the accused on trial guilty of murder.

The language first quoted is embraced in the Penal Code (1910), § 1026, and that last quoted is in substantial accord with a number of decisions of this court on the subject of dying declarations. The judge, upon a preliminary hearing, concluded that the evidence was prima facie admissible which tended to show that the deceased made declarations as to the cause of his death, and the person who killed him, and that at the time he made them he was in the article of death and was conscious of his condition. Such evidence was then admitted, and of course there was no reason for informing the jury that it was admissible. There is no statute requiring the court to charge the jury as to dying declarations when evidence as

to them has been admitted; nor has this court ever held that the judge is bound to instruct the jury on the subject of dying declarations, in the absence of a timely and appropriate written request to do so. It has, however, held in a number of cases, where there was evidence tending to show confessions of guilt by the accused, that it was not cause for a new trial for the judge to fail, in the absence of a timely and appropriate written request, to instruct the jury on the subject of confessions. Among the cases in which such ruling was made are *Nail* v. *State,* 125 *Ga.* 234 (54 S. E. 145); *Pierce* v. *State,* 132 *Ga.* 27 (63 S. E. 792); *Cantrell* v. *State,* 141 *Ga.* 98 (80 S. E. 649); *White* v. *State,* 141 *Ga.* 526 (81 S. E. 440). In *Nobles* v. *State,* 98 *Ga.* 73 (26 S. E. 64, 38 L. R. A. 577), it was held, where the charge of the court upon the subject of confessions was in all other respects full and fair, that a mere failure to charge that they should be received with caution and scanned with care was not, in the absence of a request to charge to that effect, cause for a new trial, though it would have been better practice to have done so. In *Lucas* v. *State,* 110 *Ga.* 756 (36 S. E. 87), it was held: "The failure in the present case to instruct the jury that ' a confession alone, uncorroborated by other evidence, will not justify a conviction,' is cause for a new trial." There the charge on the subject of confessions, the court said, was full and accurate save only that there was an entire failure to inform the jury that an uncorroborated confession was not of itself sufficient in law to warrant a conviction. It was said further, that, as the court undertook to instruct the jury on the law relating to confessions, the failure to mention the rule as to the necessity that they be corroborated probably impressed them with the idea that they could convict on the confessions alone. Moreover the court said, "The case at best is close and doubtful, and it is by no means clear that the evidence warranted the verdict." The Penal Code (1910), § 1031, declares: "Confessions of guilt should be received with great caution. A confession alone, uncorroborated by other evidence, will not justify a conviction." And section 1032 is: "To make a confession admissible, it must have been made voluntarily, without being induced by another, by the slightest hope of benefit or remotest fear of injury." There are decisions to the effect that the admissibility of evidence as to confessions is determined primarily by the court, but its judgment is not conclusive, and the jury

must at last determine whether any confessions were made, and, if so, whether they were freely and voluntarily made without the slightest hope of benefit or remotest fear of injury. *Price* v. *State,* 114 *Ga.* 855 (3, 4), 856 (40 S. E. 1015), and cases cited. A similar rule is applicable to the admission of evidence tending to show dying declarations; that is, that the court passes primarily on the question as to whether they are prima facie admissible, and· if held to be so, and they are admitted, it is for the jury to finally pass on the question whether or not the declarant was in articulo mortis, and at the time was conscious of his condition. *Hawkins* v. *State,* 141 *Ga.* 212 (80 S. E. 711), and cases cited.

It appears, therefore, that there is as much reason for requiring an instruction to the jury on the subject of confessions, where the evidence authorizes it, as there is for instructing them as to the law of dying declarations where the court has admitted them. And since it is not cause for a new trial that the court, in the absence of a timely and appropriate written request, fails to give the jury the law as to confessions, we feel constrained to hold that such failure to instruct the jury as to dying declarations is not cause for a new trial, although we think the better practice is to instruct in such cases, without request to do so. There are a number of cases where the court, in passing upon the admissibility of alleged dying declarations, said in effect that the evidence was admissible "under proper instructions to the jury." *Nesbit* v. *State,* 43 *Ga.* 238; *Dumas* v. *State,* 62 *Ga.* 58; *Mitchell* v. *State,* 71 *Ga.* 128; *Young* v. *State,* 114 *Ga.* 849 (40 S. E. 1000); *Anderson* v. *State,* 122 *Ga.* 161 (50 S. E. 46); *Jones* v. *State,* 130 *Ga.* 274 (60 S. E. 840); *Lyens* v. *State,* 133 *Ga.* 588 (66 S. E. 792); *Perdue* v. *State,* 135 *Ga.* 277 (69 S. E. 184); *Hawkins* v. *State,* 141 *Ga.* 212 (80 S. E. 711). In not one of these cases, however, was the question involved as to whether the court was bound, in the absence of an appropriate and timely written request, to instruct the jury on the subject of dying declarations. It is not a general rule that the admissibility of evidence is dependent upon an instruction to be subsequently given in relation thereto. And we do not understand why the admissibility of evidence as to dying declarations should be dependent upon proper instructions to be given the jury on the subject. The judge passes primarily upon the admissibility of evidence tending to show that the declarant, while in the article of death and con-

scious of his condition, stated "the cause of his death and the person who killed him," and if, in his opinion, the evidence be prima facie admissible, it is thereupon admitted without regard to any instructions the judge may subsequently give in relation to it; but the jury finally passes on the question whether or not the declarant was in articulo mortis when he made the declarations, and was then conscious of his condition, and considers all the evidence as to the alleged dying declarations in connection with all the other evidence in the case.

We cite other decisions bearing on the point under consideration. It has been held not to be cause for a new trial that the judge, in the absence of an appropriate and timely written request, fails to instruct the jury in respect to the impeachment of witnesses, or as to contradictory evidence, or as to the rule for determining the credibility of witnesses. *Brown* v. *State,* 148 *Ga.* 509 (97 S. E. 69), and cases cited. Yet the Civil Code, § 5883, declares: "The credibility of a witness is a matter to be determined by the jury *under proper instructions from the court."* (Italics ours.) The admissibility of evidence as to these matters is, of course, not dependent upon instructions to be given as to such evidence, because, if admitted, no instructions need be given unless properly requested. And it has been held that the rules for determining the credibility of other witnesses apply in passing upon the credibility of the declarant of alleged dying declarations; and that failure to instruct in respect to such rules as to him is not cause for a new trial, in the absence of a proper request. *Hall* v. *State,* 124 *Ga.* 649 (52 S. E. 891); *Devereaux* v. *State,* 140 *Ga.* 225 (78 S. E. 849): *Howard* v. *State,* 144 *Ga.* 169 (86 S. E. 540). So in cases not depending wholly upon circumstantial evidence, it does not furnish cause for a new trial that the court fails, in the absence of a proper request, to charge the law touching such evidence (*Hicks* v. *State,* 146 *Ga.* 221, 91 S. E. 57), though the Penal Code (1910), § 1010, declares: "To warrant a conviction on circumstantial evidence, the proved facts must not only be consistent with the hypothesis of guilt, but must exclude every other reasonable hypothesis save that of the guilt of the accused." And who can say, where there is both direct and circumstantial evidence, which character of evidence most impressed the jury and upon which they found a verdict? In passing upon the admissibility of the evidence of

either kind it would not be held to be admissible "under proper instructions of the court," or "subject to the charge of the court." In *Robinson* v. *State*, 84 *Ga.* 674 (11 S. E. 544), it was held: "As the State did not rely wholly on the evidence of the alleged accomplice to connect the accused with the offense, it was not incumbent upon the court, without request, to instruct the jury touching corroboration;" approvingly cited in *Cantrell* v. *State*, 141 *Ga.* 98 (3) (80 S. E. 649). In *Godwin* v. *Atlantic Coast Line R. Co.*, 120 *Ga.* 747 (48 S. E. 139), it was held: "The failure of the court to charge on the subject of expert testimony was no cause for a new trial, there having been no request for a charge on that subject." Again, it has been held: "Where evidence is admissible for one purpose, it is not error for the court to fail to instruct the jury to limit its consideration to the one purpose for which it is admissible, in the absence of a request to so instruct the jury." *Central of Georgia Ry. Co.* v. *Brown*, 138 *Ga.* 107 (74 S. E. 839). We might cite — but deem it unnecessary — other decisions of this court to the effect that failure of the court, when no proper request is made, to instruct the jury as to evidence admitted in respect to its applicability to certain features of the case, the meaning of words technical or otherwise, and as to correct methods of calculation, etc., furnishes no ground for the grant of a new trial.

2. The court charged the jury as follows: "A person may be a principal in an offense in two degrees. A principal in the first degree is the actor or absolute perpetrator of the crime. A principal in the second degree is he who is present aiding and abetting the act to be done. A principal in the second degree, except where it is otherwise provided, shall receive the same punishment that is provided for a principal in the first degree. But the act of one does not bind another until there is a common criminal intent to do what is done, and that common intent has been shown to your satisfaction and beyond a reasonable doubt. Mere presence and participation in the act of killing a human being, if you find that the defendant was present and did participate in the act of killing the human being, is not conclusive evidence of his consent and concurrence in the perpetration of the act, unless he participated in the felonious design of the person killing." After so charging, it was not cause for a new trial that the court failed to further charge that "in order to convict one as the principal in the second degree,

it is necessary to prove the guilt of the principal in the first degree."
The defendants were jointly indicted under the charge of murder,
neither being indicted as a principal in the second degree; and the
evidence barely authorized a charge on the subject of principals in
the first and second degrees. Moreover, it appeared from the state-
ment of the accused, and was inferable from some of the evidence
of the State, that the other person indicted with him had fled the
country immediately after the homicide, and it did not appear that
he had been arrested.

3. Error is assigned upon the following instruction to the jury:
" Even though a witness be successfully impeached, it is still in its
last analysis within your power to determine how much, if any, of
that testimony you will believe." Prior to giving this instruction
the court charged: " If a witness is successfully impeached, you
should discard from your consideration his or her testimony in its
entirety, unless it is corroborated in whole or in part by other com-
petent and credible testimony which you believe, or unless it is
corroborated by the circumstances of the case. If a witness has
been successfully impeached, the testimony of that witness ought
to be entirely rejected unless it is corroborated by other credible
and competent evidence which you believe, or it is corroborated as
to material matters by the facts and circumstances of the case
which you find." Then followed instructions as to alibi, the pris-
oner's statement, and a very full and correct statement as to the
rule for judging the credibility of witnesses by the jury, and that
they were the sole judges of such credibility. The charge excepted
to was then given. The charge of which complaint is made, if
considered alone, would likely be misleading. But the court had
correctly instructed the jury to the effect that the entire testimony
of a successfully impeached witness should not be considered by the
jury, but rejected, unless it was corroborated by other testimony
which the jury believed, or by the circumstances which they found
to be true. The court doubtless had in mind, in giving the sub-
sequent instruction excepted to, that it was at last for the jury to
determine how much, if any, of the testimony of a successfully im-
peached witness they would believe, when it was considered in con-
nection with the corroborating testimony or circumstances, if any,
as to which they had already been instructed. Viewed from this
standpoint, we can not say that the instruction was such as was

likely to mislead the jury; but in all probability the jury under-
stood from the instruction, considered in connection with what
had already been said to them by the court, that they were at last
to pass on the credibility of all the witnesses in accordance with
the rules previously given them by the court.  Accordingly we
reach the conclusion that this ground of the motion does not re-
quire a new trial.

4.  The fifth ground of the motion is:  "Because the court erred
in failing to charge the jury substantially as follows:  'A witness
may be impeached by disproving the facts testified to by him.'"
This ground is not meritorious.  This court has held several times
that the mere failure to charge on the subject of impeachment of
witnesses, where there is no timely written request, is not cause
for a new trial.  *Watts* v. *State,* 120 *Ga.* 496 (48 S. E. 142);
*Cæsar* v. *State,* 127 *Ga.* 710 (3), 715 (57 S. E. 66); *Dean* v. *State,*
139 *Ga.* 591 (77 S. E. 874).

5.  Complaint is made in the sixth ground that the court erred
in failing to charge substantially as follows:  "When a witness is
attacked or sought to be impeached, then it becomes the duty of
the jury to determine whether or not such witness is impeached.
Any witness is impeached when his unworthiness of credit is es-
tablished in the mind of the jury.  If you find that any witness
has been so impeached, then it would be your duty to discard his
testimony entirely, unless the same should be corroborated by other
unimpeached evidence or by the circumstances of the case."  The
court, as will be seen by reference to the 3d division of this opinion,
charged this principle.  Moreover, there was no request so to charge.

6.  The evidence authorized the verdict, and the court did not
err in refusing a new trial.

*Judgment affirmed.  All the Justices concur.*