24084.   MILLER *v.* THE STATE.

DECIDED OCTOBER 26, 1934.

*C. G. Battle, J. O. Ewing,* for plaintiff in error.

*John S. McClelland, solicitor, John A. Boykin, solicitor-general, J. W. LeCraw, I. Leonard Crawford,* contra.

MacIntyre, J.   Arthur Miller was tried in the Criminal Court of Atlanta on an accusation containing two counts, the first count charging him with carrying a concealed pistol, and the second count charging him with carrying a pistol without procuring a license to carry it.   The jury found the defendant guilty under both counts; the judge of the superior court overruled the certiorari; and the exception is to this judgment.

Unquestionably the evidence supports the verdict of guilty on the first count.   However, counsel for the plaintiff in error contend that the verdict of guilty on the second count is without evidence to support it, because the evidence fails to show that "the defendant was not on his own premises, or on premises over which he did not have exclusive control," at the time he was found with the pistol on his person.

C. L. Cates, sworn for the State, testified that he arrested Arthur Miller on September 23 in Fulton county, Georgia; that he went to a house on Pryor Road and found the defendant sitting on one side of a table and another negro across the table from him, that they were counting money—$350 or $400 in pennies, nickels, and dimes; that the defendant had a concealed pistol, which witness took off his person; and that witness did not know whose house that was, but that "Arthur Miller said that he did not live there."

In his statement to the jury the defendant said in part:   "The night Mr. Cates and them come into my sister-in-law's house   .   .   I had just stopped by there for a few minutes to borrow this pistol from her, for I work out at the Lincoln Golf Club, and the club has been broken into three times by burglars,   .   .   and I told this boy I had staying there that I would get him a pistol, and called my sister-in-law up and asked her if I could get it. The boy was sitting there at the table counting the money, and asked me to help him count it, and I wasn't at the table three minutes before Mr.

Cates come in. . . I had borrowed the pistol to take out to the Lincoln Golf Club to the watchman I had out there. He had asked me to supply him with one, and I, being manager of the club, am responsible for it, . . and that is why I had the pistol. . . I had not left the house after she gave it to me."

The second count of the accusation is drawn under the act of 1910 (Ga. L. 1910, p. 134; Park's Ann. Code, § 348 (a)), the material part of which is as follows: "It shall be unlawful for any person to have or carry about his person, in any county in the State of Georgia, any pistol or revolver without first taking out a license from the ordinary of the respective counties in which the party resides, before such person shall be at liberty to carry around with him on his person, or to have in his manual possession outside of his own home or place of business." Under this act, "the State makes out a prima facie case when it proves that the accused carried a pistol on his person, or had manual possession of a pistol, not at his home or place of business, and the burden is upon the accused to show, in answer to this evidence, that he had a license as prescribed by the act." *Blocker* v. *State,* 12 *Ga. App.* 81 (3) (76 S. E. 784). There is nothing whatever in the evidence or the defendant's statement which even tends to show that the defendant had a license to carry the pistol found on his person. But what light does the record shed upon the question as to the defendant's having the pistol "outside of his own home or place of business?" Officer Cates testified: "Arthur Miller said that he did not live there." Mr. Cates further swore: "I don't know who lived in that house." The defendant stated to the jury that he was in his sister-in-law's house for the purpose of borrowing the pistol to be used at a certain golf club of which the defendant was manager. We think it is fairly deducible from the record that the house in question was the home of the defendant's sister-in-law, and was neither the home nor the place of business of the defendant. We hold that the evidence supports the verdict. See, in this connection, *Harris* v. *State,* 14 *Ga. App.* 521 (81 S. E. 587).

It is urged that the court erred in allowing the witness Cates to testify as follows: "As to what was on the table between him and the other man—there was between $350 and $400 in pennies, nickels, and dimes. They were counting the money and rolling it in paper rolls like they have in banks." The objection was that

the testimony "was irrelevant, the defendant not being charged with anything except having a pistol in his possession." This testimony merely brought before the jury what the situation was immediately before the officer found the defendant with the pistol on his person, and we do not see that it was harmful to the defendant. Moreover, in his statement to the jury, the defendant himself saw fit to advert to the "money transaction" at some length. We hold that the introduction of this testimony is no cause for reversing the judgment.

It is next averred that the court erred in charging the jury as follows: "Any person having or carrying about his person, unless in an open manner and fully exposed to view, any kind of metal knucks, dirk, sword in case, spear, bowie-knife, or any other kind of knives manufactured and sold for the purpose of offense and defense, shall be guilty of a misdemeanor." The criticism is that "this charge was inapplicable to the facts of the case as made by the evidence." It will be observed that the charge is taken from Park's Penal Code, § 347, but that it omits the all-important word "pistol," which should have been inserted between "metal knucks" and "dirk." An inspection of the court's general charge, however, shows that the judge instructed the jury in the precise words of the statute, without omitting the word "pistol." Subsequently, and in close connection with the charge complained of, the court instructed the jury as follows: "If you believe from the evidence in the case, and beyond a reasonable doubt, that this defendant, Arthur Miller, in the county of Fulton and State of Georgia, on the 21st day of September, 1933, did have and carry about his person, not in an open manner and fully exposed to view, a *pistol,* as charged in count one of this accusation, then you would be authorized to find him guilty on that charge." The court had already read both counts of the accusation to the jury. We hardly think that this is a case where it would be fair to assume that the court charged the code section without the word "pistol," and also correctly charged it. See *Grooms* v. *Grooms,* 141 *Ga.* 478 (3) (81 S. E. 210). Our view is that the case comes within the following rule, laid down in *Cochran* v. *State,* 9 *Ga. App.* 824 (2) (72 S. E. 281): "A palpable slip of the tongue on the part of the judge, in instructing the jury as to an abstract proposition of law, is not sufficient cause for reversing the judgment, where, upon consideration of it in connection with the

34 context and all the rest of the charge, it is plain that the jury could not have been misled." While we really think the "palpable slip" was in erroneously copying the charge in the ground, we are assuming that the court did charge as stated in the ground. Our conclusion that the ground discloses no reversible error is based upon the hypothesis that, even if the charge was given as certified by the court, "it is plain that the jury could not have been misled."

The verdict was: "We, the jury, find the prisoner guilty on counts 1-2." The sentence of the court was that the defendant "be put to work and labor on the public works of the County of Fulton, or otherwise, as the commissioners of said county may direct, for the space of twelve months." The assignment of error is: "The sentence . . is indefinite and uncertain as to what offense the defendant was convicted; for what crime or misdemeanor he was sentenced—whether for count one or two of the accusation; or for any offense. Therefore, said sentence is illegal and void." The sentence is a legal one under the verdict and the law, and is not "illegal and void" for any reason assigned.

In conclusion, we hold that the judge of the superior court did not err in overruling the certiorari, for any reason assigned.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*