29617.   WILLIAMS *v.* THE STATE.

DECIDED SEPTEMBER 21, 1942.   REHEARING DENIED DECEMBER 10, 1942.

*Frank S. Twitty,* for plaintiff in error.
*Maston O'Neal, solicitor-general,* contra.

MACINTYRE, J.   The defendant was indicted for murder and was convicted of voluntary manslaughter. The killing with a shotgun took place at the home of J. C. Williams, who was the father of the defendant, Tommie Williams. J. C. Williams had entertained all Saturday night with a fish (mullet) supper, and the shooting took place near daylight Sunday morning. The crowd attending the supper was estimated to have been between twenty-five and fifty persons. Liquor was being sold out of a jug

at the house, and a card game was in progress near the east end of the house by the light of a kerosene rag sticking out of a coca-cola bottle. The testimony of one witness was to the effect that the defendant and the deceased drew their guns upon a sudden quarrel, and the defendant killed the deceased, and that thus they engaged in a mutual fight on equal terms.

1. The defendant contends that the court erred in charging the law of manslaughter as based on mutual combat. Mag Singleton, a witness for the defendant, testified as follows: "I recall that night that Tommie [defendant] shot Charlie Thomas [deceased]. It was Sunday morning. I was around the house standing at the corner of the kitchen and I heard a gun. When it fired I looked around and it was Charlie had it. Me and his brother went to him to get the gun. Me and Charlie's brother. His brother had hold of him and he told him to turn him loose because he was not going to give us the gun because he come to kill or get killed. He, Charlie, run and run into a big oak tree and throwed the gun up and shot, and then Tommie went to him and grabbed the gun. He was standing there by the fence. He grabbed it and threw it up in the tree and that gives Tommie a chance to run and he run in the house and got a gun and come back. Charlie had done reloaded his gun and had it in a shooting condition. I mean by that, he had it ready to shoot, up like this [indicating]. He said, 'All right, Tommie, I am ready if you are,' and Charlie had his gun pointed towards Tommie." Tommie, the defendant, thereupon shot and killed the deceased, Charlie.

"A jury in arriving at a conclusion upon disputed issues of fact may believe a part of the testimony of a witness or witnesses, and reject another part thereof, it being their duty to ascertain the truth of the case from the opinion they entertain of all the evidence submitted for their consideration." *Ocean Accident & Guarantee Cor.* v. *Lane,* 64 *Ga. App.* 149 (2) (12 S. E. 2d, 413). "Upon a trial for murder, where there is adduced any evidence sufficient to raise a doubt, however slight, as to whether the case is murder or voluntary manslaughter, the court should instruct the jury upon the law of voluntary manslaughter, as well as upon the law of murder." *Bird* v. *State,* 49 *Ga. App.* 83, 85 (174 S. E. 217). Taking the view of the evidence in the most favorable light to upholding the verdict of voluntary manslaughter, for every

presumption and every inference is in its favor (*Vandeviere* v. *State*, 58 *Ga. App.* 18, 197 S. E. 338), the evidence authorized the finding that the deceased and the accused had suddenly fallen out; that the defendant ran from near the yard fence into the house where the entertainment, or what is termed the "mullet supper," was going on; that the deceased shot at the defendant; that the defendant went into the house and got a gun and returned, and in the meantime the deceased reloaded his gun and had it in a shooting condition; that he had it up and was ready to shoot; and that as the defendant returned with his gun the deceased said, "All right, Tommie, I am ready if you are," and the deceased had his gun pointed at the defendant. The defendant thereupon shot and killed the deceased.

If two draw their guns upon a sudden quarrel, and one kills the other, it is manslaughter upon the theory that they engaged with each other in a mutual fight on equal terms. *Gann* v. *State*, 30 *Ga.* 67, 72. "Where there is no evidence of mutual combat at the time of the homicide, it is error for the trial judge to give § 73 [§ 26-1014] in charge to the jury. *James* v. *State*, 123 *Ga.* 548 (51 S. E. 577); *Delegal* v. *State*, 109 *Ga.* 518-524 (35 S. E. 105); *Freeman* v. *State*, 112 *Ga.* 48 (3) (37 S. E. 172). In order for § 73 to be applicable (in other words, in order for mutual combat to exist), there must be a mutual *intent* to fight, on the part of both parties. *Sanders* v. *State*, 26 *Ga. App.* 475 (106 S. E. 314). It is not necessary that mutual blows be exchanged (*Pollard* v. *State*, 124 *Ga.* 100, 52 S. E. 149; *Buchanan* v. *State*, 153 *Ga.* 866, 113 S. E. 87), nor is it material who strikes the first blow or fires the first shot, nor is it necessary that both parties strike blows or fire shots. *Johnson* v. *State*, 173 *Ga.* 734 (161 S. E. 590). This intent, 'like any other intent, may be manifested by acts and conduct of the parties and the circumstances surrounding them at the time of the combat, as well as the circumstances leading up to and culminating in such combat. The question of intent is peculiarly for the jury where there is any evidence from which it may be inferred.' *Sanders* v. *State*, supra." *Smith* v. *State*, 51 *Ga. App.* 601, 605 (181 S. E. 212). The judge did not err in charging the law of manslaughter based on mutual combat.

2. The defense provided for in the latter part of Code § 26-1011, that it shall be justifiable homicide for a person to kill

"any persons who manifestly intend and endeavor, in a riotous and tumultuous manner, to enter the habitation of another for the purpose of assaulting or offering personal violence to any person dwelling or being therein," was not involved in this case. *Rouse* v. *State,* 136 *Ga.* 358, 360 (71 S. E. 667). It was not error to fail to charge that part of this section. Nor did the judge commit error in not charging Code § 26-1013, which relates to justifiable homicide when there is a necessity to kill in defense of habitation, for the reason that there was no evidence to authorize such instruction. *Clark* v. *State,* 142 *Ga.* 601 (5) (83 S. E. 223) ; *Brannon* v. *State,* 140 *Ga.* 787 (4) (80 S. E. 7) ; *Devereaux* v. *State,* 140 *Ga.* 225 (78 S. E. 849).

The evidence authorized the verdict. The judge did not err in overruling the motion for new trial.

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*