## SLAUGHTER et al. v. THE STATE.

1. Since in misdemeanors all are principals, if one who is a private detective falsely represent to a merchant that the latter is being systematically robbed, and offer to detect the thief for a certain reward, which the merchant agrees to pay for the detection and conviction of the thief, and afterward the detective, through an agent, for the purpose of obtaining the reward, induce an employee of the merchant to steal certain articles of value, which are brought to the detective and by him surrendered to the merchant, the detective, as well as his agent and the merchant's employee, is guilty of larceny, the value of the articles stolen being such as to make the offense a misdemeanor.

2. Where several persons conspire to do an unlawful act, the acts and declarations of one of them pending the enterprise are admissible in evidence against the others, although the former may not be on trial or indicted.

3. There was some evidence tending to show the guilt of the accused, and the trial judge was satisfied with the verdict of the jury. This court will, therefore, not interfere with the refusal to grant a new trial.

Argued April 15, — Decided April 25, 1901.

Indictment for larceny from the house. Before Judge Fite. Fulton superior court. March 13, 1901.

Westmoreland Brothers and T. L. Bishop, for plaintiffs in error. C. D. Hill, solicitor-general, contra.

SIMMONS, C. J. Bradley Slaughter and Horace Looney were jointly indicted and convicted of the offense of larceny. They moved for a new trial, and the judge overruled the motion. To this judgment they excepted. Construing the evidence most strongly in favor of the verdict, we find it substantially as follows: Slaughter, Horace Looney, and D. S. Looney, Horace Looney's father, were

private detectives. On January 15, 1901, Slaughter told Schaul, a merchant, that his store was being systematically robbed, and that Slaughter would catch the thief for fifty dollars. Schaul stated that nothing had been recently missed from the store, but that he would take the matter under consideration. On the 18th of the same month, in another conversation, Schaul agreed to pay Slaughter fifty dollars reward for the detection and conviction of the alleged thief. Jackson, a negro bootblack, who was used by the defendants in some of their detective work, was told by D. S. Looney that if he saw any one attempting to sell stolen goods to bring the articles to his office. Shortly thereafter Fluellen, a negro boy employed in Schaul's store, turned over to Jackson, for sale, a finger-ring. Jackson took the ring to the office of the private detectives. They told him to retain it for the time, and afterwards D. S. Looney told Jackson to have Fluellen to "get" a watch. Jackson told Fluellen that he could sell a watch for him if he would get it, and Fluellen brought a watch to Jackson. Jackson, on January 22, carried this watch to the office of the detectives and turned it over to Horace Looney. On the next day Slaughter telephoned Schaul to come to the office. Upon Schaul's arrival, Slaughter showed him the watch and ring, and asked him if he could identify them. He identified the watch as having come from his store, but could not say whether it had been stolen or sold. The watch was then taken to Schaul's partner, who immediately identified it as a watch that had been stolen; for he had given a tray of watches to Fluellen to clean and had afterward missed this watch from the tray. The ring was like some carried in stock by Schaul, but was a cheap ring, of a character not easy to identify. No other articles were missed from the store of Schaul, and it may be inferred from the evidence that nothing else was stolen at or about this time. It appeared without contradiction that Fluellen stole both the ring and the watch. Jackson testified that neither of the defendants nor D. S. Looney had told him to have Fluellen to steal a watch, but only to have him to "get" a watch. Fluellen testified that he had been induced to steal both the ring and the watch by Jackson's continued solicitation, Jackson stating to him that there were some people in an office who wanted a watch and ring, and who would buy them if he would steal them. It appears that the watch and the ring were returned by the detectives to Schaul, the owner.

1. One of the grounds of the motion for new trial was that the court erred in charging the jury substantially what is set out in the first headnote hereto ; the complaint being that the defendants were not indicted for conspiracy, and that the charge dealt with an offense different from that with which the defendants stood charged. We think this ground of the motion without merit. The facts, that one of the detectives solicited a reward from Schaul for the detection of a thief represented to be systematically robbing Schaul's store, that Schaul agreed to pay the reward, that another of the detectives had Jackson to induce Fluellen to steal from Schaul's store, that the stolen articles were turned over to the third detective and subsequently returned to their owner, that nothing else was missed from the store, and that all these things took place within a very few days, would clearly indicate that there was a conspiracy or joint scheme, to which the detectives and Jackson were parties, to have Fluellen commit the larceny and then to claim the reward for his detection. In misdemeanors there are no accessories before the fact nor principals in the second degree, but " all who would be such in felonies are principals in misdemeanors." *Kinnebrew* v. *State*, 80 *Ga.* 232. What each of these parties did was the action of all; and when Fluellen committed the larceny, taking and carrying away the property with intent to steal it, his action was, in law, that of Jackson and of the detectives who had instigated the crime. Fluellen was not party to the scheme to obtain the reward, and stole lucri causa, but he shared with the others the intent that the larceny should be committed, and they were bound by what he did in this matter, although some of them may not have known that Fluellen was the person who was to commit the larceny. The defendants' agent incited and induced Fluellen to commit the larceny, and the agent's knowledge was imputable to the defendants. The statements of Jackson and Fluellen were largely denied by the defendants, but the jury believed the witnesses rather than the defendants. Slaughter, in his statement, said that it was often necessary to use a " stool-pigeon" in order to catch a thief. The defendants also claim that they were merely endeavoring, as private detectives, to detect a criminal. How far private detectives may go in such matters it is difficult definitely to state. It has been held that, after the detectives have ascertained that a conspiracy has already been formed by others with intent to commit a crime, they may join the

conspirators and go with them to the place where the crime is committed, in order to obtain evidence to convict the real criminals. Whatever may be the law upon that point, we are clear that a private detective can not originate a conspiracy for the purpose of committing crime, and then, after having induced others to commit the crime, claim for himself innocence and immunity. It was argued here that the defendants were not guilty of larceny, because the goods were returned to the owner and the defendants had at no time any intent to appropriate them to their own use or to permanently deprive the owner of them. It is settled that where one finds property belonging to another and conceals it for the purpose of returning it after a reward has been offered by the owner and of obtaining such reward, he is guilty of larceny. Com. v. Mason, 105 Mass. 163, 7 Am. Rep. 507; Berry v. State, 31 Ohio St. 219, 27 Am. Rep. 506; 2 Clark & Marshall, Crimes, 747; 1 Wharton, Crim. Law (10th ed.), § 906. "Although intent to appropriate is essential [to larceny], yet such appropriation may be made even though there is a purpose to return the property to the owner, if the purpose is to make use of the temporary possession and subsequent return with a view to obtaining a pecuniary advantage." 1 McClain, Crim. Law, § 567. It is not necessary, to constitute larceny, that the property should be itself permanently appropriated. It is sufficient if the property be taken and carried away with the intent to appropriate any pecuniary right or interest therein, as where it is taken with the expectation of claiming a reward for its return. The facts of the present case differ from those of the cases referred to by the above-cited authorities, but we can not see that there is any difference in principle that would constrain us to hold that the defendants were not guilty of larceny. They did not expect to retain the goods or to permanently deprive the owner of them, but they did expect to claim the money reward offered by the owner for the detection of the thief, the reward having been offered before the goods were taken. As to this matter Dr. Wharton, in his work on Criminal Law (10th ed.), vol. 1, § 149 (2), says: "All detectives are in one sense decoys, and all decoys are in one sense detectives. But when the decoy ceases to be detective and becomes 'the apparent originator of the crime, then, . . if he was not employed by the government, . . he becomes a co-conspirator liable to the same punishment as his associates, on the same principle as that which makes

a person who appropriates lost property for the purpose of getting a reward indictable for larceny." See also State *v.* Dudoussat, 47 La. Ann. 977, where it is ruled that a detective or decoy does not become a real accomplice because he uses devices to detect crime, "provided the device is not a temptation and solicitation to commit it." In the same case, in discussing the admissibility of evidence, where the defendant had been entrapped, it was said: "It was essential, therefore, to show that the defendant proposed to commit the crime, and the means employed were not used as an inducement or temptation, but for the purpose of securing the evidence." It appears to us to be less criminal to conceal lost property with the hope and purpose of getting a reward which may be thereafter offered for its return than to induce a man to offer a reward for the detection of a thief, when no theft has been committed, and then concoct a scheme to have goods stolen and returned in order to obtain the reward. After a careful consideration of the case we think the charge of the court was sustained by the law and the evidence.

2. Upon the trial the court overruled the defendant's objections to certain testimony of Jackson, offered by the State, as to the directions given by D. S. Looney to Jackson "to have Fluellen get a watch, the objection being that it was hearsay and did not bind the defendants." We think the evidence was properly admitted. It is true D. S. Looney was not on trial and had not been indicted with the defendants, but, if he was in the conspiracy with the others, his declarations, made before the conspiracy was ended, were as binding upon them as though he had been indicted and tried with them. "It makes no difference, as to the admissibility of the act or declaration of a conspirator against a defendant, whether the former be indicted or not, or tried or not, with the latter; for the making one a codefendant does not make his acts or declarations any more evidence against another than they were before; the principle upon which they are admissible at all being that the act or declaration of one is the act or declaration of all united in one common design, a principle which is wholly unaffected by the consideration of their being jointly indicted." Wharton, Crim. Ev. (9th ed.) § 700. Of course the declarations or acts of a third party can have no probative value in this connection, unless the conspiracy is proved. It may be proved either before the admission of evidence as to the acts or declarations or afterwards. If no conspiracy is proved, the evi-

dence as to the acts or declarations amounts to nothing. In the present case there was evidence tending to show that D. S. Looney joined in the scheme or conspiracy with the defendants and Jackson, and there was no error in admitting evidence of his declarations.

3. There was some evidence to show the guilt of the defendants, and the jury, by their verdict, accepted this evidence as true. The trial judge approved their finding, and this court will not interfere with his discretion in refusing to grant a new trial upon general grounds.

*Judgment affirmed. All concurring, except Lewis, J., absent.*