PRICE *v.* THE STATE.

1. Where in the trial of a criminal case a witness is offered by the State to prove confessions of guilt made by the accused immediately after he was given into the custody of the witness by the arresting officer, and the testimony of the witness shows that the confessions were made to him freely and voluntarily, it is not incumbent on the judge to require the State to call and examine the arresting officer to ascertain if he used any threats or offered any inducement to the accused while the latter was in his custody. *Dawson* v. *State*, 59 *Ga.* 333; *Dumas* v. *State*, 63 *Ga.* 600; *Irby* v. *State*, 95 *Ga.* 467.

2. Where the accused, when arrested by an officer, stated to the officer that if he would conduct the accused safely to jail the latter would make a statement, and the officer replied that he would endeavor to conduct the accused safely

whether he made a statement or not, and thereupon the accused made a confession, the confession was not for this reason inadmissible. If the confession was induced by hope, the inducement was not held out by the officer but proceeded from the accused himself. *Bohannon* v. *State*, 92 *Ga.* 32; *Minton* v. *State*, 99 *Ga.* 254; *Hecox* v. *State*, 105 *Ga.* 625.

3. It was not error to charge the jury to the effect that it is the duty of the court to determine primarily the admissibility of alleged confessions, but that its judgment is not conclusive upon the jury, and it is for the jury at last to determine whether such a confession was made and whether it was freely and voluntarily made. *Dawson* v. *State*, supra; *Irby* v. *State*, supra.

4. It is not error for the court to refuse a request to charge that confessions of guilt should be rejected by the jury unless the State has shown beyond a reasonable doubt that they were made voluntarily and without being induced by another by the slightest hope of benefit or remotest fear of injury. *Carr* v. *State*, 84 *Ga.* 250 ; *Thomas* v. *State*, 84 *Ga.* 613 ; *Nix* v. *State*, 97 *Ga.* 212.

5. It is not error to refuse requests to charge to the effect that each and every juror should believe for himself that the accused has been shown to be guilty beyond a reasonable doubt, before he agrees to a verdict of guilty, and that if any member of the jury has such a reasonable doubt he should not agree to a verdict of guilty. *Smith* v. *State*, 63 *Ga.* 170 (20) ; *Fogarty* v. *State*, 80 *Ga.* 455. See also 62 Albany L. J. 314, and 41 Am. Law Reg. n. s. 56.

6. While in a criminal case every material allegation in the indictment should be proved beyond a reasonable doubt, it is not error to refuse to charge that "all the *phases* of the case which in law is required to be proved should be proved beyond a reasonable doubt."

7. It is not error to charge that "It is the duty of the jury to reconcile the testimony of the witnesses . . so as to impute perjury to no witness," where the context shows that the charge means that the jury should do so if they can.

8. Under the facts shown, there was no error in refusing to charge upon the law of manslaughter or of any other grade of homicide less than murder.

9. The evidence fully warranted the verdict, and the trial judge did not err in refusing a new trial.

*Judgment affirmed. All the Justices concurring, except Little, J., absent.*

Submitted February 17, — Decided March 11, 1902.

Indictment for murder.    Before Judge Felton.    Bibb superior court.    January 22, 1902.

Mrs. Rowland, sixty-two years old, and very deaf, was murdered at her home in Bibb county, on the morning of December 5, 1901. She was found lying in the yard near the back door, with two fatal wounds in her head, which appeared as if made with an ax or other like instrument, and a bruise over her eye.    Her husband and son had gone to work that morning, and she had been left alone.    The ground near where she was found lying was somewhat torn up, as if there had been a struggle.    The accused was seen on the same morning, between a quarter and a half mile from the Rowland house,

walking rapidly away from that vicinity, and, as the man who saw him approached, he left the road and went into a field.    Later on the same day he was met by one Hunnicutt, who, observing a fresh cut on his face, asked him about it.   He answered that his brother, finding him in a room with a woman, struck him with a stick.  He further said that he was going to Alabama, and was in a hurry.  He left Bibb county, and was arrested, a few days later, in Houston county.   He was acquainted with the husband and son of the deceased, to whom he had tried to sell a pistol; and with Streyer, a storekeeper in the neighborhood, to whom he pawned the pistol. When arrested and in the custody of the sheriff, Westcott, he freely and voluntarily confessed to the homicide, saying: " I had a pistol that I had let Mr. Walter Streyer have for twenty-five cents worth of groceries.   I traded that pistol with young Walter Rowland for ninety cents.   I went down to Mrs. Rowland's house that morning, between six and seven o'clock, to see Walter Rowland to get the ninety cents from him and to go and pay Mr. Streyer the quarter back for the pistol.   I went in the lot and around the house of Mrs. Rowland, and she was at the back door with her knitting in her hand. I asked her where Walter was, saying that I came there to sell him my pistol; and she became very much excited, and being deaf, I don't suppose she might have known what I said; and she got alarmed, and told me, 'You go away from here and leave here.   If you don't, I will go to Mr. Bazemore's and report you or have you arrested.'   I got alarmed and got excited, not knowing what white people might think; they might think I was here for something else, and I wanted to get away from there; and I struck her with my fist in the face, and she commenced running, and she run around the house, and I taken after her, and in pursuing her I ran over an ax and picked it up and struck her and knocked her down, sort of a glancing lick; and when she was on the ground I realized what I had done, and I wanted time to get away from there, and I taken the ax and I struck her about the second time.   I never hit her very hard.   I did not intend to kill her ; and I got away from there, and went out through the fence with the dog after me, and in passing under the fence the dog caught me by the leg, and I kicked at the dog, and in turning my face the barbed wire snagged it, and that was where it cut me," etc.

After verdict of guilty, a motion for new trial was overruled, and the accused excepted.   The motion contains the following grounds:

1. The court erred in admitting, over objection, the testimony of Westcott, of the confession made to him by the accused when he was delivered into the custody of Westcott by Bennett, one of the deputy-sheriffs who had arrested him ; the objection being upon the ground that this testimony was inadmissible before there was a preliminary examination of Bennett to determine whether or not he had held out to the accused any hope of reward or fear of punishment, it appearing that Bennett was present when the confession to the sheriff was made.

2. Bennett and Amerson arrested the accused. When they saw him they went rapidly to him, one of them leveled a firearm and told him to throw up his hands, and they thereupon seized him and put on handcuffs. He asked what they wanted him for, and what they were going to do with him. He was answered, " Take you to Macon." He asked, " What for ?" Bennett replied, " You need not talk; you know what we want you for." He said, " If I tell you the truth about it, you won't let the people in south Macon bother me, will you ?" Bennett answered, " No, if you don't or do tell the truth, it is my duty ; I am going to take you to jail. I have not got any promises to make to you, and I am going to take you to jail." Bennett testified : " He asked me the second time the same thing again — if I would tell him I would not let the people in south Macon hurt him if he told me; and I told him the second time, if he did not tell me a thing I was going to take him on. He did not say anything about lynch; he said he did not want the people in south Macon to get hold of him. I told him, if he told me or didn't tell me, I would keep them from bothering him." The accused thereupon made a statement in the nature of a confession, in substance the same as heretofore reported. Error was assigned upon the overruling of counsel's objection that the confession, under the circumstances, was made in the hope of benefit, and therefore should be excluded from evidence.

3. The court charged the jury : " In determining the question as to whether or not a confession is admissible as evidence in the case, the law puts upon the presiding judge the duty of determining, by a preliminary investigation of the question of whether or not apparently under the evidence, whether preliminarily under the evidence, that confession was made under such circumstances as authorized it to go to the jury to be considered by them as testimony

in the case; and if the testimony is permitted to go to the jury by the presiding judge as being primarily admissible, the fact that it is permitted to go to the jury by the presiding judge is not conclusive upon the jury that the confession, if one was made, was made under such circumstances as orders and requires the jury to consider the same as evidence in the case; the law leaving to the jury the determination of the question of whether or not the evidence or the testimony which is offered on the part of the State, of a confession, was in point of fact a confession, and whether or not the same was made under such circumstances as authorize you to consider it." Error was assigned, because the judge left to the jury to determine whether the testimony showed a confession in fact, and whether the circumstances authorized them to consider it.

4–6. The court refused requests to charge as follows:

"It is incumbent upon the State to show beyond a reasonable doubt that the confessions relied upon to convict were made voluntarily and without being induced by another by the slightest hope of benefit or remotest fear of injury; and if not so proved, you should reject the confession."

"Each and every juror should believe for himself that the defendant has been shown to be guilty under the evidence, beyond a reasonable doubt, before he should agree to a verdict of guilty. If any member of the jury has such reasonable doubt, as hereinbefore explained to you, of the guilt of the defendant, he should not agree to a verdict of guilty."

"All the phases of the case which in law is required to be proved should each and all be proved beyond a reasonable doubt; and if the State fails to prove any one of said necessary phases beyond a reasonable doubt, then the jury should acquit."

7. The court charged: "It is the duty of the jury to reconcile the testimony of the witnesses who have testified in the case, so as to impute perjury to no witness." Error was assigned, in that the court made it the absolute duty of the jury to reconcile the testimony and not to impute perjury, whether they could do so or not. This instruction was followed in the charge by these words: "If you find a conflict in the testimony between the testimony of the witnesses who have testified in the case, then it is your duty to believe that witness or those witnesses that you think best entitled to belief, looking to their manner on the stand, their relation to the

case, their interest in the result, the reasonableness or unreasonableness of the facts they relate, their familiarity with the facts that they testify about, their prejudice or bias, and the personal credibility of the witnesses so far as it legitimately appears in the trial of the case; the jury being exclusively the judges of the credibility of the witnesses and the weight that you give to their testimony."

8. Error in refusing a proper request to charge on the law of manslaughter, in the words of the Penal Code, § 64. Defendant contends that, under the confessions in evidence, if he struck the blows that killed the deceased, he did so in a panic of fright, that there was no intent to take human life, and that he was not guilty of murder; and this issue ought to have been presented to the jury.

9. Verdict contrary to law and evidence.

*B. M. Davis* and *A. W. Lane*, for plaintiff in error.
*Boykin Wright, attorney-general,* and *William Brunson, solicitor-general,* contra.