31075. MARTIN *v.* THE STATE.

574

DECIDED MARCH 6, 1946. REHEARING DENIED MARCH 21, 1946.

*Wesley R. Asinof, Roland Melody,* for plaintiff in error.

*Lindley W. Camp, solicitor, E. E. Andrews, solicitor-general, Durwood T. Pye,* contra.

MacINTYRE, J. ■ A nolle prosequi may, without the consent of the accused, be entered at any time before the case has been submitted to the jury. Code, § 27-1801. A case is not submitted to the jury, within the meaning of this section, until the jury have been empanelled and sworn in the cause. *Fortson* v. *State,* 13 *Ga. App.* 681 (79 S. E. 746); *Mitchell* v. *State,* 126 *Ga.* 84 (54 S. E. 931).

■ The plea, denominated a "plea in bar and former jeopardy," alleged that an indictment had been returned against the defendant for the offense of lottery; that the State nol prossed it after the defendant had been arraigned on it; that, immediately after said indictment had been thus withdrawn, the State presented an accusation charging the defendant with the same offense; that this accusation was withdrawn over the objection of the defendant af-

ter formal arraignment; and that the accusation in the present case thereafter was presented, and the defendant was arraigned on it, tried, and convicted. The plea does not show that the jury had been sworn on the first indictment or the first accusation. Such plea, while called by the defendant a plea of former jeopardy, was in fact one of former indictment or autrefois arraign. There being no such plea as former indictment in the same case, or autrefois arraign, such alleged plea was here properly stricken. *Doyal* v. *State,* supra.

■ The defendant, Wesley Barron, alias Fred Martin, was charged in 15 counts with the offense of keeping, maintaining, and operating a lottery known as the lottery game, a misdemeanor. The first count in the accusation is: "That the said Wesley Barron, alias Fred Martin, in said County of Fulton, on the 16th day of August, 1943, did keep, maintain and operate a lottery known as the number game, for the hazarding of money; *the date herein alleged being an essential averment as to this transaction;* contrary to the laws of said State, the peace, good order and dignity thereof." (Italics ours.) Each of the other 14 counts is the same, except that each alleges a different date. Thus each, of course, alleges that such date is "an essential averment as to this transaction," alleged in the particular count. With regard to similar misdemeanors covering a period of time within the statute of limitations, which is two years, the prosecution may elect to charge a particular offense at a particular time, or charge a general offense which would cover in one count the whole period of two years prior to the filing of the accusation, and proof of the commission of the misdemeanor on any date within two years prior to the filing of the accusation, including the date alleged, would authorize a conviction, and only one punishment could be inflicted. 2 Wharton's Criminal Evidence (10th ed.) 1230, § 589; 1 Wharton's Criminal Procedure (10th ed.) 214, § 162. If the above italicized words are construed as making each count in the accusation a particular offense, which must be proven to have been committed on the day alleged in that particular count, and on that day only, before conviction could be had on that count, each count in the indictment would be charging a particular offense in the particular instance identified by the count. The words, "the date herein alleged being an essential averment as to this

transaction," are so averred that the date, August 16, 1943, becomes essential to identify the particular transaction described in count one. And thus the averment in such count distinguishes the particular offense charged therein from all the other offenses charged in the other counts of the indictment on other particular days alleged in such other counts, each of which likewise charges a particular offense. Proof that the offense of lottery, as charged in count one, was committed on any other day or every other day, within two years prior to the filing of the accusation, would not authorize a verdict of guilty on count one. Without the italicized words, count one would have charged a general offense, and the State could have proved the offense of operating a lottery on August 16, 1943, or on any or all days within two years prior to the filing of the accusation; and under such an accusation, irrespective of the number of days that the State proved, the defendant would have been guilty of operating a lottery within the two years prior to the filing of the accusation, and if he had been charged with such a general offense and convicted thereof, only one misdemeanor punishment could have been inflicted; and hence, if the defendant had been found guilty of a general offense in the accusation, which charged him in effect with the operation of a lottery on August 16, 1943, or any other day within two years prior to the filing of the accusation, a plea of autrefois convict would be available to the defendant for a subsequent charge of operating a lottery on any day within such a two-year period. If the defendant had been acquitted, a plea of autrefois acquit would be available. *Reynolds* v. *State,* 114 *Ga.* 265 (40 S. E. 234); *McWilliams* v. *State,* 110 *Ga.* 290 (34 S. E. 1016); *McCoy* v. *State,* 121 *Ga.* 359 (49 S. E. 294); *Craig* v. *State,* 108 *Ga.* 776 (2) (33 S. E. 653); *Henley* v. *State,* 59 *Ga. App.* 595, 598, 599 (2 S. E. 2d, 139); *Harris* v. *State,* 193 *Ga.* 109, 117 (17 S. E. 2d, 573, 147 A. L. R. 980).

In 1 Bishop's New Criminal Procedure 285, § 458, it is said: "Moreover, on broader views, some deem, the author submits rightly, that the joining in proper cases of distinct misdemeanors in one indictment, their trial at one hearing before the petit jury, and the punishing of each as though on a separate indictment, are essential to the administration of real justice—in some cases essential as protecting the accused from the overburden of needless

578

trials, in others as saving the courts from being blocked by them to the utter suspension of public justice." We think that in this State the prosecution has the right to elect whether it will prosecute, in a case such as is here under consideration, for one general offense or for the several particular congruous offenses as alleged in the different counts of the accusation. In the instant case, where the accusation alleged the commission of the offense of operating a lottery in 15 different counts on 15 different days, and made the day alleged in each count an essential element to be proved before a conviction could be had on a particular count, the accusation in the form in which it was here drawn did not charge a general offense, for there was no one day common to any two counts, but each count charged a particular offense; and where a defendant is convicted on each such count, 15 punishments as for a misdemeanor may be inflicted. *Hudgins* v. *State,* 22 *Ga. App.* 242 (95 S. E. 875) ; *Cook* v. *State,* 22 *Ga. App.* 789 (97 S. E. 258) ; *Williams* v. *State,* 8 *Ga. App.* 583 (70 S. E. 47) ; *Harris* v. *State,* supra; Fleming *v.* State, 28 Texas Crim. App. 234 (12 S. W. 605) ; Huffman *v.* State, 23 Texas Crim. App. 491 (5 S. W. 134) ; Commonwealth *v.* Robinson, 126 Mass. 259 (30 Am. R. 674) ; Wilkes *v.* Dinsman, 48 U. S. 89 (21 L. ed. 618).

■ " 'We know of no law which requires the verdict to be written upon any particular paper, and we are not cited to any decision or statute to that effect.' . . · Where it is held that while the better practice is that the verdict shall be written upon the initial pleading, dated, and signed by one of the jury as the foreman, none of these details are essential to a legal verdict." *Gittens* v. *Whelchel,* 12 *Ga. App.* 141, 144 (3) (76 S. E. 1051) ; *Lang* v. *South Georgia Investment Co.,* 38 *Ga. App.* 430 (144 S. E. 149). A verdict is legal even though written on the wrong paper. Verdicts acquire their legality from return and publication. *Sapp* v. *Parrish,* 3 *Ga. App.* 234 (2) (59 S. E. 821) ; *Liverpool Ins. Co.* v. *Peoples Bank,* 143 *Ga.* 355 (2a) (85 S. E. 114); *Sullivan* v. *State,* 29 *Ga. App.* 377, 378, 379 (115 S. E. 290) ; *Roberts & Copenhaven* v. *State,* 14 *Ga.* 8. Thus special ground 8 does not show cause for reversal.

■ In the instant case the defendant was being prosecuted on an accusation based upon an accompanying affidavit of E. I. Hilderbrand. The accusation stated in its body that said Hilder-

brand was prosecuting in behalf of the State. He signed the accusation, and on the back of the accusation the names of Charlie Hodges and Hilderbrand were written. Before the trial and his arraignment, the defendant demanded a copy of the accusation and a list of witnesses. In response to this demand, he was furnished the names of the two witnesses thereon, to wit, Charlie Hodges and E. I. Hilderbrand. The name of Luther Thomas did not appear, and the defendant objected to all the testimony of Luther Thomas, on the ground that his name did not appear on the accusation as a witness, and his name had not been furnished to the defendant "prior to his arraignment, after a legal demand for the same had been made." He now contends that the entire testimony of Thomas was incompetent for the reason just stated. A defendant charged with a misdemeanor has no right to demand an indictment. *Perry* v. *State, 54 Ga. App.* 410 (4) (187 S. E. 895). In the instant case, the defendant was being tried, not on an indictment, but on an accusation founded upon the affidavit of E. I. Hilderbrand, who was likewise the prosecutor signing the accusation.

In *Inman* v. *State, 72 Ga.* 269, 276, the Supreme Court said: "The bill of rights [Code, § 2-105] provides 'that every person charged with an offense against the laws of this State shall be furnished, on demand, with a copy of the accusation, and a list of the witnesses on whose testimony the charge against him is founded.' The words, 'on whose testimony the charge against him is founded,' are equivalent to the words used in § 4634 [27-1403] of the Code, 'the witnesses who gave testimony before the grand jury.' On whose testimony is the charge against the accused founded? Is it not founded on the testimony of those who gave testimony before the grand jury? The grand jury bring the charge, and it must be founded on something; this something must be the testimony of witnesses sworn and examined by them. Under § 4634 [27-1403] of the Code, the accused was entitled to be furnished with a copy of the indictment and a list of the witnesses who gave testimony before the grand jury, before arraignment. But by the bill of rights the accused is only entitled to a copy of the accusation and list of witnesses upon which the same is founded, upon demand. So we think the bill of rights modifies the Code, § 4634 [27-1403), to this extent and no more, that the

accused shall be furnished with a copy of the indictment and lists of witnesses who gave testimony before the grand jury, on demand."

It was not erroneous to allow Luther Thomas, whose name did not appear on the accusation, to testify over the objection urged. *Holley* v. *State,* 191 *Ga.* 804 (3) (14 S. E. 2d, 103).

■ An assignment of error in the certiorari complains of remarks made by the solicitor-general during the progress of the trial. The record discloses that Louise Hill was sworn as witness for the State, and after she had answered a few questions, Mr. Asinof, the defendant Martin's counsel, stated: "In all fairness to this witness, who is charged in this court with the offense of lottery and whose case is still pending, we insist that she be warned and notified that she doesn't have to answer any question tending to incriminate her. Now Louise, you don't have to answer that question. The Court: 'Are you represented by Mr. Asinof?' A. 'Yes sir.' Mr. Camp: 'I am going to put him on the stand in a minute and find out who paid him.' Mr. Asinof: 'I move for a mistrial on account of the violation of article 14 of the constitution, depriving this defendant of due process of law and a fair trial by such prejudicial remarks from the solicitor representing the State.' The Court: 'I overrule the motion, but instruct the jury not to give any consideration to the remark of the solicitor, particularly the remark referred to by counsel.' "

While the remarks were not aptly made in point of time, we think that it can hardly be said that they were of such a nature, in view of the corrective measures of the court, as would require the grant of a new trial. It seems that here Mr. Asinof, who, so far as the record shows up to this point, represented the defendant only, should have let the court instruct the witness for the State as to her right not to answer any questions tending to incriminate her, but he himself instructed the witness that she did not have to answer the questions. Up to this time the record shows that he had not informed the court that he represented the State's witness, and that he did not tell the witness to refrain from answering the questions until she had received instructions from the court, but that he himself gave the instructions to the witness. It might be noted that the record shows that Louise Hill later testified that, when she was tried for lottery, Mr. Asinof appeared in court to represent her, although she had not employed him or asked him to do so; saying

further, "Mr. Asinof is my lawyer and.I didn't employ him." Also, later in the trial, the solicitor put Mr. Asinof on the stand and asked who had employed him to represent a number of the defendant's lottery operatives including Louise Hill; Mr. Asinof declining in some instances to state who had employed him to represent these persons, and in the case of Louise Hill testifying that he did not remember whether the defendant did or did not employ him to represent her. In view of the corrective measures taken by the court including the instruction to Louise Hill that she did not have to answer any question tending to incriminate her, we do not think that this assignment shows cause for reversal. *Waller* v. *State*, 164 *Ga.* 128 (4) (138 S. E. 67) ; *Nelson* v. *State*, 187 *Ga.* 576 (6), 582 (6) ·(1 S. E. 2d, 641) ; *Grayhouse* v. *State*, 65 *Ga. App.* 853 (16 S. E. 2d, 787).

■ "While it may generally be the better practice to require a prima facie case of conspiracy first to be made, before admitting evidence of the acts and declarations of one of the alleged conspirators, there is no inflexible rule to that effect. The trial court has some discretion as to the order in which testimony may be introduced; and if a prima facie case of conspiracy is shown from the whole evidence, the admitting of such testimony is not error." *Coleman* v. *State*, 141 *Ga.* 731, 733 (82 S. E. 228). "Of course the declarations or acts of a third party can have no probative value in this connection, unless the conspiracy is proved. It may be proved· either before the admission of evidence as to the acts or declarations or afterwards." *Slaughter* v. *State*, 113 *Ga.* 284, 288 (38 S. E. 854, 84 Am. St. R. 242).

Charlie Hodges testified that, during a part of the time he worked for the defendant in the lottery in question, he turned the tickets which he wrote and picked up over to Reuben Winder; that Winder was pick-up man for the defendant; that Winder started picking up after Phillip Williams was caught on the panel truck containing the secret compartments or traps; and that Lomax worked for Winder, and at times Winder and Lomax worked together in the lottery in question. Lomax also testified that Reuben Winder was a pick-up man for the defendant. This testimony as to the operation of the lottery tends to· show that Lomax, in picking up for Winder (who picked up for the defendant), was one of the defendant's operatives, and was only one degree removed from Winder in

importance. Hence, the statements of Lomax and Winder to the witness Ailmack, that between August 16, 1943, and December 2, 1944 (the range of time covered in the various counts of the accusation), they were working for the defendant, that is, that they were doing acts entering into the conduct of the lottery business with Fred Martin, in the lottery, and that every time Lomax would get drunk he would say he was going to "Mr. Fred" and get some money, were admissible as declarations of coconspirators; and the court did not err in allowing the witness Ailmack to testify as to such statements, which were properly admitted because the declarations of Lomax and Winder were made to the witness during the time the lottery enterprise or scheme was being carried on by each of them as operatives and by Martin, the defendant, and they were declarations of one of several conspirators during the pending criminal project. *Thrasher* v. *State,* 68 *Ga. App.* 820, 823 (4) (24 S. E. 2d, 222). The 26th assignment of error in the defendant's certiorari, relating to the admissibility of the testimony of the witness, Usher Williams, is controlled adversely to the contentions of the defendant by the rule of evidence stated in this division of the opinion.

■ One of the special assignments of error complains that the defendant moved to exclude the evidence of Mr. Cook, the State Revenue Commissioner, which was about to be introduced by the State, on the ground that it was an alleged admission or confession which had been made in an investigation by the State Revenue Commission at the request of the defendant made through Mr. Asinof, his attorney, then and now, with reference to the return to the defendant of 42 cases of taxpaid whisky seized by them. But it does not appear in this exception what was the admission or confession·to which the defendant's counsel was objecting on the ground that it was not freely and voluntarily made and without hope of reward. The ground, not stating what was the alleged confession to the introduction of which he objected, although known to him, presents nothing for the consideration of this court. *Trammel* v. *Shirley,* 33 *Ga. App.* 710, 716 (Rule 17) (145 S. E. 486).

■ Another assignment of error complains of the admission of statements made at the hearing last mentioned, to which the defendant objected on the ground that they were not free and volun-

tary, as they were made under a hope of reward in the return of the 42 cases of whisky, in connection with the defendant's effort to induce the State Revenue Commission to return seized liquor; and the defendant might have thought that, by disclosing his criminal lottery activities, and by showing that he had the liquor for use in his lottery enterprise, and not otherwise, he might induce the commission to return such liquor. But there is nothing in the evidence to show that any promise in this regard was made to the defendant by Mr. Cook or any representative of the Revenue Commission. If the defendant hoped to obtain the benefit of having his liquor returned, by making the statement that the whisky was to be used in his lottery business, which lottery was not then under investigation, it was a hope engendered by seeds of his own planting, and such hope would not make the confession involuntary. If the confession was induced by hope, the inducement was not held out by the officer, but proceeded from the accused himself, and it was not error to admit it in evidence under proper instructions by the court. This assignment of error does not show a cause for reversal. *Price* v. *State,* 114 *Ga.* 855 (2) (40 S. E. 1015); *Wilson* v. *State,* 19 *Ga. App.* 759 (4), 764-771 (92 S. E. 309).

■ Other special assignments of error are mentioned and insisted upon, but they are not argued. However, upon careful examination of each of them, we do not think that any ground of reversible error appears.

■ The judge charged the jury: "Now, gentlemen, I charge you that, before you would be authorized to convict the defendant on any of these counts, you must believe he was engaged in the business of keeping, maintaining, and operating a lottery on the specific date named in such count of the accusation, because it alleged herein that the date alleged in each of the several counts of this accusation, is an essential averment." As to count 1, the Fred Martin, in the County of Fulton and State of Georgia, on the 16th day of August, 1943, did keep, maintain, and operate a lot-judge charged: "Now, gentlemen of the jury, if you believe beyond a reasonable doubt that this defendant, Wesley Barron, alias tery known as the number game for the hazarding of money, the date herein alleged being an essential averment as to this transaction, contrary to the laws of said State, the peace, good order

and dignity thereof, and as charged in count one of the accusation, then you would be authorized to find the defendant guilty on count one. If, on the other hand, you do not believe him guilty as charged in count one, or if you entertain a reasonable doubt as to his guilt, it would be your duty to acquit him." As to the other 14 counts, the judge instructed the jury in the same language, except as to each particular date of the alleged particular offense. The testimony of the numerous witnesses against the defendant is corroborated by his own free and voluntary confession before the State Revenue Commission, that he was in the lottery business, had been for several years, had between 1000 and 1500 negroes dependent on him, had to pay their fines, furnish them with lawyers, netted about $30,000 a year, and needed his liquor, which he had been using in connection with his lottery activities.

The contention is made that there was no proof of the specific dates charged in the various counts. This contention is without foundation. The testimony showed that the lottery was in operation in the county on each of the specific dates charged; and Charlie Hodges testified that he was working in the defendant's lottery business on each of said specific dates, and that the defendant was keeping, maintaining, and operating the lottery in Fulton County on each of those dates. The verdict of guilty was authorized on each of the counts alleged in the accusation.

 The judge did not err in overruling the motion for a new trial.

*Judgment affirmed.* *Broyles, C. J., and Gardner, J., concur.*