## A09A2081. TRUELOVE v. THE STATE.
### (691 SE2d 549)

ADAMS, Judge.

Paul Henry Truelove was charged with trafficking in methamphetamine (by possessing more than 28 grams), possession of methamphetamine with intent to distribute, simple possession of a quantity of methamphetamine "separate and distinct from the quantity alleged in counts one and two," and driving with a suspended license. At the close of the State's case, Truelove moved for a directed verdict, in part because the methamphetamine offered in support of Count 1 amounted to only 27.6 grams. The trial court then allowed the State, over objection, to nolle prosequi Counts 2 and 3 and to proceed on Count 1 by combining the 27.65 grams with the separate quantity of methamphetamine that had been introduced in support of Count 3. The jury convicted Truelove on Count 1 and on Count 4 (driving with a suspended license). Truelove appeals.

Construed in favor of the verdict, the evidence shows that Teressa Stansell was arrested for drug possession and that, as a result, she was asked to assist the Multi-Agency Narcotics Squad in making a controlled drug purchase. At Agent Jeremy Grindle's request, Stansell made telephone calls to several people before eventually calling a friend named Tom Cobb who lived in Cumming. She made an arrangement to have at least an ounce of methamphetamine delivered to her location in Hall County. Stansell did not expect Cobb himself to make the delivery; rather she knew that Truelove was going to do it, and she called Truelove at least twice to ask him where he was and when to expect him, and to see what kind of vehicle he would be driving. Nevertheless, Stansell testified that she never discussed drugs with Truelove. But she did not give him any other reason for wanting him to come to Hall County. Agent Grindle witnessed Stansell make the calls.

Using information provided by Stansell, Grindle asked other officers to assist and told them what kind of make and model truck to expect, as well as the direction of travel and approximate time. But Stansell apparently identified the truck as it passed by her and Grindle's location at the Forsyth/Hall County line. And Grindle testified that the location was then changed to a certain grocery store because the other officers were not quite in position when the truck was first sighted. Stansell then called Truelove and gave him a false

story about why she was at a different location than originally planned, but she testified that she did so because she did not want him to think that he was being set up. The other officers stopped Truelove at the grocery store. They noticed that Truelove's brake lights were out.

The officers began to check Truelove's license, and Truelove refused to consent to a search. Truelove's license turned out to be suspended, and he was placed under arrest. A search of his person revealed a syringe commonly used to inject methamphetamine in his pants pocket. Officers also found a small plastic baggy near the right-hand side of the driver's seat on the floor, which, it was later determined, contained 0.69 grams of methamphetamine. Further searching revealed 27.65 grams of methamphetamine concealed under the hood of the truck, in a plastic bag located inside the windshield wiper reservoir. One ounce is equivalent to approximately 28.349 grams. And the total weight of the two quantities found in the truck was almost exactly that amount. An officer testified that those who deliver drugs for others are often paid in kind. The drugs found in the two locations were of the same type and packaged in a similar manner.

1. The direct and circumstantial evidence was sufficient to authorize the jury to conclude beyond a reasonable doubt that Truelove was guilty of possession of more than 28 grams of meth-amphetamine. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Truelove contends that there was no evidence that he had knowledge of the drugs found under the hood, and that the evidence showed that it was not his truck and that others had access to the truck. But the circumstantial evidence showed that he was driving to meet Stansell in response to her telephone call to someone asking to buy an ounce of methamphetamine; that Stansell knew from the conversation that Truelove would be driving; that she never gave him another reason for his coming to meet her; that the drugs found near his person and under the hood were of the same type and packaged in a similar manner; that the total quantity added up to almost exactly one ounce; and that those who transport drugs are often paid in kind. Thus the finding of constructive possession is based on more than physical proximity. Compare *Whipple v. State*, 207 Ga. App. 131 (427 SE2d 101) (1993) (mere presence in car owned and accessed by others insufficient to establish constructive posses-sion of cocaine found in headrest).

2. Truelove contends the trial court erred by denying his motion for a directed verdict on Count 1 and by allowing the State to nolle prosequi Counts 2 and 3.

"After the case has been submitted to a jury, a nolle prosequi shall not be entered except by the consent of the defendant."

OCGA § 17-8-3. A case has been "submitted to the jury," within the meaning of this section, when the jury has been "[i]mpanelled and sworn in the cause." *Martin v. State*, 73 Ga. App. 573, 575 (1) (37 SE2d 411) (1946); *Rhear v. State*, 171 Ga. App. 435, 436 (1) (319 SE2d 895) (1984) (quoting *Martin*). See also *McIntyre v. State*, 189 Ga. App. 764, 765 (1) (377 SE2d 532) (1989) ("A nolle prosequi pursuant to OCGA § 17-8-3 may be entered without the consent of the accused at any time prior to the attachment of jeopardy."). Thus, this case had been submitted to the jury within the meaning of the Code section.

Truelove did not consent to the procedure. At the end of the State's case, Truelove moved for a directed verdict on all three drug counts. On Count 1, he was charged with trafficking in methamphetamine by "unlawfully and knowingly posess[ing] more than 28 grams of a mixture containing methamphetamine. . . ." Thus, Truelove was charged with violating OCGA § 16-13-31 (e), which provides: "Any person who knowingly . . . has possession of 28 grams or more of methamphetamine . . . commits the felony offense of trafficking in methamphetamine. . . ." Truelove explained that the State relied on the methamphetamine found under the hood of the car for this charge and that he had been charged separately for simple possession based on the drugs found on the floorboard; indeed, the indictment charged that the drugs on the floorboard were "separate and distinct from the quantity alleged in counts one and two." And at the earlier bond hearing, the State explained that the drugs found in the two places "are not the same drugs":

> The charges are not the same drugs. The drugs that were in the engine compartment are not the basis of the other lesser charges.

The State responded by offering to remove Counts 2 and 3 from consideration and to proceed on Count 1 by combining the total quantity of drugs found. In the ensuing discussion, Truelove's attorney questioned the effect of such a plan and its ramifications, especially with regard to whether jeopardy would attach to Counts 2 and 3. Truelove's attorney then agreed to a withdrawal and dismissal; but the discussion continued with a discussion of whether, under those circumstances, the State would be allowed to ask for a charge of the lesser included offense of simple possession, in essence reviving the charge on Count 3, rather than, as explained by the court, an "all or nothing deal, trafficking or not." The State indicated that it would want to charge on the lesser offense under Count 1, and Truelove's attorney spoke up, "We can't agree to . . . that." In the subsequent discussion, Truelove's attorney further

explained that the whole proposal was unacceptable for several reasons, and he concluded by saying, "Well, we object." When the court indicated that the State would be allowed to proceed, Truelove's attorney further objected "in advance" to allowing the State to assert a lesser included offense under Count 1. All in all, it cannot be said that Truelove consented to the State's nolle prosequi of Counts 2 and 3. And "entering a nolle pros without the defendant's approval after he has been placed in jeopardy constitutes error." *Marshall v. State*, 275 Ga. 218, 219 (2) (563 SE2d 868) (2002).

Finally, *Marshall* dictates that we reverse and remand for a new trial. As explained by the Supreme Court in a later case:

> In *Marshall*, the jury informed the court that it had reached unanimous verdicts on felony murder, aggravated assault, and a possession offense, but that it could not reach a verdict on the malice murder count or the included offense of voluntary manslaughter. Instead of having the jury deliberate further, the trial court accepted a partial verdict and, at the state's request, entered a nolle prosequi on the malice murder count. Significantly, the trial court did not conclude that the jury was deadlocked on the malice murder count. Because a nolle prosequi could not be entered without the defendant's consent once the case had been submitted to the jury, we held that the trial court erred in entering the nolle prosequi. Moreover, we concluded that the error "eliminat[ed] the jury's full consideration of voluntary manslaughter and a possible finding of provocation and passion with respect to the act which caused the killing," and we ruled . . . that the judgment had to be reversed.

*Byrd v. State*, 277 Ga. 554, 557-558 (3) (592 SE2d 421) (2004).

Here, similar to *Marshall*, the trial court eliminated the jury's full consideration of the charges against Truelove, including whether it might acquit on Count 1 and convict on Count 3. Furthermore, the trial court essentially allowed the State to amend the indictment to eliminate the charge that he possessed a quantity separate and distinct from the amount alleged in Counts 1 and 2. See generally *Driggers v. State*, 295 Ga. App. 711, 717-718 (4) (b) (673 SE2d 95) (2009) ("indictment cannot be materially amended after the grand jury has returned the indictment into court"). Therefore, following *Marshall*, we reverse and remand to the trial court for a new trial.

3. Truelove also contends the court erred with regard to the introduction of similar transaction evidence. But a new trial may lead to different decisions by the State, and therefore there is no need for us to address this enumeration of error. The other asserted

errors are not likely to recur upon retrial.

*Judgment reversed and case remanded. Blackburn, P. J., and Doyle, J., concur.*

DECIDED FEBRUARY 18, 2010.

*Patricia McCann*, for appellant.

*Lee Darragh, District Attorney, Kelley M. Robertson, Assistant District Attorney*, for appellee.