COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, McClanahan and Alston
Argued at Alexandria, Virginia


BERNARD CHESLEY MARSH

                                                    OPINION BY
v.        Record No. 2396-09-4                      JUDGE ROBERT J. HUMPHREYS
                                                    FEBRUARY 8, 2011

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Jonathan C. Thacher, Judge

        Corinne J. Magee (The Magee Law Firm, PLLC, on brief), for
        appellant.

        Karen Misbach, Assistant Attorney General (Kenneth T.
        Cuccinelli, II, Attorney General, on brief), for appellee.


        Bernard Chesley Marsh ("Marsh") was convicted in a bench trial of grand larceny, in

violation of Code § 18.2-95, and was sentenced to four years incarceration with all but sixty days

suspended.  On appeal, Marsh argues that the trial court erred in finding the evidence sufficient

to support his conviction of grand larceny.  Specifically, he contends that he never intended to

permanently deprive Rhonda Gazda ("Gazda") of her property.  For the following reasons, we

disagree and affirm the trial court's conviction.

                                        BACKGROUND

        "Where the issue is whether the evidence is sufficient, we view the evidence in the light

most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible

therefrom."  Sandoval v. Commonwealth, 20 Va. App. 133, 135, 455 S.E.2d 730, 731 (1995).  So

viewed, the evidence is as follows.

On October 17, 2008, Marsh went to Gazda's apartment to attend a birthday party with her. Gazda, Marsh's girlfriend of approximately two years, was getting ready when she noticed she was missing a ring from her jewelry box along with some other items. She asked Marsh if he had taken the missing items. Marsh replied he had needed some quick cash so he had pawned the items,[1] but he would get the jewelry back when he got paid the next day.[2] They then attended the birthday party together. Upon returning to her apartment after the party, Gazda told Marsh she did not want him staying with her. After Marsh left, Gazda called the police, and reported the missing items as stolen property. Gazda testified that she never allowed Marsh to take items or pawn items before even though he had done so in March 2008, with some of the same pieces and had subsequently returned them.

Detective Richard Buisch, with the Fairfax County Police Department, became involved with the case when he came in contact with Gazda on an unrelated matter. Gazda informed Detective Buisch that she had reported the stolen property, and asked what had happened with regards to the report. Detective Buisch contacted Marsh, and made arrangements with him for the return of the items. Marsh returned some of the items that he had pawned to Detective Buisch, and informed him that he was trying to save up money to purchase the other items back.[3] After giving Marsh two to three weeks to come up with the money to retrieve the rest of the items, Detective Buisch placed a hold on them when Marsh did not obtain the rest of the items, retrieved them from Vienna Jewelry and Estate Buyers in Vienna, Virginia, and returned them to Gazda.

---

[1] The pawnshop receipts contain thirty-one pieces of jewelry that Marsh used as collateral for ten different loans.

[2] Marsh testified that he had been working as a self-employed carpentry contractor on a carpentry project for which he expected to receive $2,000 in four different installments. During September and October, this was his sole source of income, and he had already received one installment of $800, none of which he used to redeem the jewelry.

[3] The record does not indicate which loans Marsh paid off or which items he returned.

Suzette Marsham, the manager of Vienna Jewelry and Estate Buyers, testified that Marsh had brought in jewelry on several occasions and used it as collateral for loans. She stated that using the jewelry as collateral was different than a sales transaction because using the jewelry as collateral permitted the individual to come back and retrieve the jewelry.[4] Ms. Marsham testified that on one of the occasions when Marsh brought in jewelry, a couple of the transactions had been written up as sales transactions rather than as loan transactions with the jewelry as collateral. However, upon seeing the transactions were improperly written up, Marsh insisted that the items were not to be sold, and Ms. Marsham redid the paperwork to reflect that the transactions were loan transactions and not sales transactions. The receipts indicate that Marsh received $2,975 and that payments had not been received on some of the loans.[5] Gazda testified that she thought the approximate value of the jewelry taken was $25,000.

Marsh took the stand at trial and testified that he had taken the items and pawned them to help carry him through a job he was working on. Marsh stated that he had initially needed approximately $500. When asked why he continued to pawn more items after he received that amount, he replied "[b]y then I was in a position where I was robbing Peter to pay Paul . . . [t]hat was Ms. Gazda to pay the shop." He also stated that he had informed Gazda he would get her items back when he was paid the next day. Marsh further testified that it was always his intent "to redeem [the jewelry] and give it back to her" as soon as he received his check.

---

[4] The record is silent as to what would happen if Marsh was unable to pay the loan amount, if the jewelry could be sold after certain conditions had not been met (i.e default on the loan or passage of time), or under what conditions Marsh would be able to get the jewelry back. However, each receipt contains the following language in the "Total of Payments" box: "Amount required to redeem pawn on Maturity Date."

[5] The receipts from the pawnshop, dated September 20, September 24, September 26, October 11, October 14, October 16, and October 17, reflect that Marsh owed $3,272.50 on all of the loans due to finance charges.

At trial, Marsh made a motion to strike the charge against him, contending that the evidence was insufficient to prove he intended to permanently deprive Gazda of the jewelry. The trial court denied the motion, and found him guilty of grand larceny. Marsh now appeals to this Court.

ANALYSIS

In a challenge to the sufficiency of the evidence, "we 'presume the judgment of the trial court to be correct,' and 'will not set it aside unless it is plainly wrong or without evidence to support it.'" Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002) (quoting Broom v. Broom, 15 Va. App. 497, 504, 425 S.E.2d 90, 94 (1992); Dodge v. Dodge, 2 Va. App. 238, 242, 343 S.E.2d 363, 365 (1986)). The reviewing court, under this standard, does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (emphasis in original and citation omitted). Instead, the reviewing court asks whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319 (emphasis in original). When reviewing the sufficiency of the evidence to support a conviction, "we determine whether the evidence, viewed in the light most favorable to the prevailing party, the Commonwealth, and the reasonable inferences fairly deducible from that evidence support each and every element of the charged offense." Haskins v. Commonwealth, 31 Va. App. 145, 149-50, 521 S.E.2d 777, 779 (1999).

"In Virginia, larceny is a common law crime. We have defined larceny as 'the wrongful or fraudulent taking of personal goods of some intrinsic value, belonging to another, without his assent, and with the intention to deprive the owner thereof permanently.'" Carter v. Commonwealth, 280 Va. 100, 104-05, 694 S.E.2d 590, 593 (2010) (quoting Skeeter v. Commonwealth, 217 Va. 722, 725, 232 S.E.2d 756, 758 (1977)). "Stated simply, larceny

requires that there be a taking and asportation of the seized goods, coupled with an intent to steal those goods." Id. at 105, 694 S.E.2d at 593 (citing Britt v. Commonwealth, 276 Va. 569, 575, 667 S.E.2d 763, 766 (2008)). Code § 18.2-95 defines grand larceny and provides, in pertinent part, that "[a]ny person who . . . (ii) commits simple larceny not from the person of another of goods and chattels of the value of $200 or more . . . shall be guilty of grand larceny . . . ."

"'The defendant's intent to steal must exist at the time the seized goods are moved.'" Id. at 105, 694 S.E.2d at 593-94 (quoting Britt, 276 Va. at 575, 667 S.E.2d at 766). "The element of criminal intent may, and often must, be inferred from the facts and circumstances of the case, including the actions of the defendant and any statements made by him." Tarpley v. Commonwealth, 261 Va. 251, 256, 542 S.E.2d 761, 764 (2001) (citing Stanley v. Webber, 260 Va. 90, 96, 531 S.E.2d 311, 315 (2000); Commonwealth v. Taylor, 256 Va. 514, 519, 506 S.E.2d 312, 314 (1998)). "In Virginia, absent countervailing evidence of intention otherwise, 'the wrongful taking of the property in itself imports the *animus furandi*.' In other words, the very existence of a trespassory taking permits the inference (unless other circumstances negate it) that the taker intended to steal the property.'" McEachern v. Commonwealth, 52 Va. App. 679, 685, 667 S.E.2d 343, 346 (2008) (citations omitted).

However, "'[o]ne who takes another's property intending at the time he takes it to use it temporarily and then to return it unconditionally within a reasonable time – and having a substantial ability to do so – lacks the intent to steal required for larceny.'" Carter, 280 Va. at 107, 694 S.E.2d at 595 (quoting 3 Wayne R. LaFave, Substantive Criminal Law § 19.5(b), at 89 (2d ed. 2003)). "An intent to return, however, must be unconditional. Thus it is no defense to larceny that the taker intends to return the property only if he should receive a reward for its return, or only upon some other condition which he has no right to impose." Id. (citing LaFave, supra, at 90).

- 5 -

> As noted above, it is not a defense to larceny merely to have an intent to return the property; in addition one must, at the time of taking, have a substantial ability to do so (even though, as events turn out, it may later become impossible to do so). . . . So too, an intent to pawn the property, accompanied by an intent later to redeem the property and return it to its owner, is a defense only if the taker's financial situation is such that he has an ability to redeem it.

LaFave, supra, at 91; see also State v. Langford, 483 So. 2d 979, 985 (La. 1986) ("[T]o counter inferred or proven intent to permanently deprive, a defendant must show both that he had the intent to return the property within a reasonable time, and that he had a substantial ability to do so." (citing LaFave & Scott, Criminal Law § 88 (1972)); Putinski v. State, 161 A.2d 117, 119 (Md. 1960) ("'If a man takes another's goods with intent to pawn them, and does so, he is clearly guilty of larceny if he does not intend to redeem and return them. And he is guilty even if he does intend to redeem and return them, if he does not show ability to do so, or at least a fair and reasonable expectation of ability. If he shows such ability or expectation, it seems that he is not guilty.'" (quoting Clark & Marshall, Crimes, Sec. 12.04, p. 733 (6th Ed.))).

Marsh acknowledges that there was a trespassory taking of Gazda's property, but argues that the evidence was insufficient to prove that he intended to *permanently* deprive her of that property rather than temporarily. While the fact finder could have reasonably inferred from Marsh's acknowledgment that he took the property that he intended to steal it, Marsh contends that the facts do not support this inference because they do not establish beyond a reasonable doubt that he intended to permanently deprive her of the jewelry – that there is "counterveiling evidence of intention otherwise." McEachern, 52 Va. App. at 685, 667 S.E.2d at 346. Specifically, he argues that the evidence negates any inference that he intended to permanently deprive her of the property because the transactions were written up as loans, he had made several payments on those loans, none of the loans had gone past their maturity except the ones the police placed a hold on, and he had redeemed some of the items.

In response, the Commonwealth asks this Court to broaden the conditions excluded under the "unconditional" return requirement of the intent to permanently deprive defense to include this type of situation where the return of the property was conditioned on Marsh's receipt of his paycheck and on the condition that he subsequently redeem the property from the pawnshop. However, we decline the Commonwealth's invitation to do so.[6] In this case, Marsh was not placing a condition on Gazda that she has to pay off the loans in order to receive the property back, nor is he placing some other condition on her that he has no right to impose. As has been noted by our Supreme Court, "it is no defense to larceny that the taker intends to return the property only if he should receive a reward for its return, or only upon some other condition which he has no right to impose." Carter, 280 Va. at 107, 694 S.E.2d at 595. The Supreme Court noted that "[t]o take property by trespass for the purpose of 'selling' it to the owner is larceny." Id. at 108 n.2, 694 S.E.2d at 595 n.2.

The cases in which courts have declined to find the lack of an intent to permanently deprive a defense to larceny due to a condition imposed have all involved the defendant placing a condition on the original owners of the property, and not a condition the defendant has imposed upon himself or that is imposed upon him by a third party. Id. at 107-08, 694 S.E.2d at 595 ("According to their scheme, Carter and his accomplice intended to return the paint [to the store] upon receipt of a payment [from the store] for returning it, a condition which they had no right to impose."); People v. Davis, 965 P.2d 1165 (Cal. 1998) (holding that a defendant's taking of merchandise from the store shelf with the intent to claim ownership and return it to the store on

---

[6] The concurrence paints too broad a brush in addressing conditions imposed by a defendant "which he has no right to impose." Carter, 280 Va. at 107, 694 S.E.2d at 595. The concurrence would broaden the application of the conditions imposed to include "a condition imposed upon the defendant by himself or imposed upon the defendant by a third party because of defendant's own actions" as "evidence of whether the defendant's intent to return the property was unconditional." However, this approach expands the rule to include conditions not imposed upon the actual owner of the property by the defendant.

the condition that the store pays a refund constitutes an intent to permanently deprive within the meaning of larceny); Slaughter v. State, 38 S.E. 854 (Ga. 1901) (affirming larceny when the defendant, a private detective, took an individual's watch and returned it to him claiming a reward); Commonwealth v. Mason, 105 Mass. 163 (1870) (affirming larceny conviction where defendant took the horse from the owner's stable with the intent of concealing it until the owner offered a reward and returning it in order to obtain the reward); Berry v. State, 31 Ohio St. 219 (1877) (rejecting defendant's claim that he did not intend to permanently deprive when he took the horses from the owner's stable in order to obtain a reward); State v. Hauptmann, 180 A. 809 (N.J. 1935) (upholding larceny conviction where defendant carried away the Lindbergh baby in its nightdress and intended only to return the nightdress on the condition that Lindbergh negotiate a payment for the baby's return). Because the condition in this case is not one placed on Gazda, we do not find that the return of the property was based on a condition Marsh had no right to impose, and we decline to apply the "unconditional" return requirement to the facts of this case.[7]

Rather, in turning to the facts of this case, we hold the evidence was sufficient to support the fact finder's conclusion that Marsh did not have the substantial ability to return the property to Gazda at the time he took it because of his financial situation. LaFave, supra, at 91. Marsh testified that he took the items because he was having money troubles, and needed money in

---

[7] This Court noted in Carter v. Commonwealth, 54 Va. App. 700, 707, 682 S.E.2d 77, 81 (2009) (emphasis added), aff'd, 280 Va. 100, 694 S.E.2d 590 (2010), that "[t]he intent to return, conditioned on a future event that may or may not occur *and* based on a false assertion of ownership, should be disregarded as a matter of law and, as such, cannot negate the inference of intent to steal." However, that case involved the false assertion of ownership by the defendant to the actual owner, and not to an unrelated third party. Further, the condition was also placed on the owner of the goods and not on the defendant such that the items would not be returned until the owner satisfied a condition. Thus, we find this inapplicable to the facts of this case in which the return of Gazda's property was subject to conditions placed on Marsh by a third party because of Marsh's actions, and the false assertion of ownership was not made to the owner of the property, but rather to a third party.

order to carry him through a job he was working on. In order to redeem the property, Marsh would need $3,272.50. However, the only job he had at that time was a contract for carpentry work in which he would receive a total of $2,000 in installments as the work was completed. In addition, he was behind on other bills, and the initial $800 installment that he received from the $2,000 went towards payment of those outstanding bills. The evidence shows that he did not have that amount at the time he pawned the items, nor was he able to get that amount when Detective Buisch gave him a few weeks to do so. Marsh had neither the present ability nor the prospective ability at the time he took the items because of his financial situation to return the property. Thus, he did not have the substantial ability required, and his stated intent to return the property is not a defense to larceny.

In addition, the trial judge, as the fact finder, was not required to believe Marsh's testimony that he intended to return the jewelry to Gazda the next day when he got paid and could retrieve the items from the pawnshop. "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998). "A defendant's false statements are probative to show he is trying to conceal his guilt, and thus is evidence of his guilt." Emmett v. Commonwealth, 264 Va. 364, 372, 569 S.E.2d 39, 45 (2002) (quoting in parenthetical from Rollston v. Commonwealth, 11 Va. App. 535, 548, 399 S.E.2d 823, 831 (1991)).

For these reasons, we find the evidence supports the trial court's factual finding that Marsh intended to permanently deprive Gazda of her property. Accordingly, we hold that the trial court did not err in holding the evidence sufficient to find Marsh guilty of grand larceny in violation of Code § 18.2-95, and affirm.

Affirmed.

McClanahan, J., concurring.

I agree with the conclusion reached by the majority that the evidence was sufficient to prove Marsh intended to permanently deprive Gazda of her property and therefore concur in affirming his conviction. I disagree, however, with the majority's discussion of whether his intent to return the property was "unconditional."

As the majority states, when a defendant takes the property of another person with the intent to use it temporarily and return it within a reasonable time, he generally lacks the intent to commit larceny. Carter v. Commonwealth, 280 Va. 100, 107, 694 S.E.2d 590, 595 (2010). But his intent to return must be "unconditional." Id. Therefore, "it is no defense to larceny that the taker intends to return the property" upon a "condition which he has no right to impose." Id.

Although Carter and the other cases cited by the majority involved defendants placing a condition upon the original owners of the property,[8] I do not believe those cases stand for the proposition that a self-imposed condition could not also constitute a condition the defendant has no right to impose. I cannot, therefore, agree that "[b]ecause the condition in this case is not one placed on Gazda, we do not find that the return of the property was based on a condition Marsh had no right to impose . . . ." Indeed, a condition imposed upon the defendant by himself or imposed upon the defendant by a third party because of defendant's own actions is also evidence of whether the defendant's intent to return the property was unconditional.

Nevertheless, since the majority concludes the evidence was sufficient to prove Marsh intended to permanently deprive Gazda of her property because he did not have the substantial ability to return it, I believe the discussion of whether his intent to return was "unconditional" is unnecessary to the holding. See Morgan v. Commonwealth, 50 Va. App. 120, 130-31, 646

---

[8] People v. Davis, 965 P.2d 1165 (Cal. 1998); Slaughter v. State, 38 S.E. 854 (Ga. 1901); Commonwealth v. Mason, 105 Mass. 163 (1870); Berry v. State, 31 Ohio St. 219 (1877); State v. Hauptmann, 180 A. 809 (N.J. 1935).

S.E.2d 899, 904 (2007) (appellate court opinions should avoid dicta and be decided on the best and narrowest grounds).